A jury returned a verdict for the defendants, Southeast Property Management, Inc. ("Southeast"), and Dennis Guthrie, on Rayburn Nichols's claims against them alleging assault and battery, negligence, and wantonness. The defendants raised defenses of self-defense and contributory negligence. Nichols appeals and presents two issues for this Court's review:
 "1. Did the trial court commit prejudicial error in allowing [Southeast and Guthrie] to call the witness, Ms. Carpenter, to collaterally impeach the testimony of [Nichols's] son, Mark Nichols?
 "2. Did the trial court commit prejudicial error in denying [Nichols's] motion in limine prior to the trial of this case?"
The alleged assault and battery and/or negligence or wantonness occurred at Serene Valley Apartments, which were managed by Southeast. Guthrie was Southeast's maintenance man and worked from 8:00 a.m. to 5:00 p.m. Monday through Friday and was on call for maintenance emergencies. Guthrie's apartment and the apartment of Nichols's son, Mark Nichols, were at Serene Valley Apartments, separated from each other by a landing six to eight feet wide.
Our standard of review requires that we review the evidence most favorably to Southeast and Guthrie, since the jury returned a verdict in their favor. This evidence shows that around midnight, Nichols banged on and kicked Mark's door, while yelling obscenities for 30 to 45 minutes. Guthrie finally came out on the landing and asked Nichols what he wanted. There was a discussion between Guthrie and Nichols about the noise that Nichols was making and whether Nichols should leave. Guthrie testified that Nichols, who has a seventh-degree *Page 662 
black belt in karate, grabbed Guthrie's left shirt collar and postured himself to strike Guthrie, whereupon, Guthrie said, he pushed Nichols backward, causing Nichols to lose his balance and fall down the stairs.
Nichols's account of the incident preceding the fall indicated that he was not upset, was not making a disturbance, and was quietly knocking on Mark's door when he was attacked for virtually no reason by Guthrie. To substantiate this, Nichols called Mark as a witness. Mark testified that he and his wife were asleep and did not hear Nichols knocking on the door. He denied that Nichols was yelling, kicking, or beating on the door. This supported Nichols's testimony that he was quietly knocking on the door and that he was not upset or making a disturbance.
Southeast and Guthrie called as a witness Sherry Carpenter, whose daughter was married to Mark at the time of the incident, to relate what Mark had told her the day after the incident.
 "Q. Would you tell us, please, what Mark Nichols related to you about the accident the night before?
 "Nichols's attorney: Judge, we want to raise an objection to hearsay. She has no firsthand knowledge of what happened."
The trial court overruled the objection, allowing the question to be asked not for the truth of what was said but for impeachment purposes. Nichols further objected on the ground that the lawyer for Southeast and Guthrie had not told him that Ms. Carpenter would be called as a witness. There was no pre-trial order or agreement to exchange lists of witnesses; therefore, the trial court overruled this objection. Thereafter, the following questions were asked and the following answers were given, without objection:
 "Q. Ms. Carpenter, what did Mark Nichols tell you about the incident that night?
 "A. He said his father came over, threatening to whip him because he had missed a meeting, a karate meeting.
 "Q. Did he tell you why he had missed the karate meeting?
 "A. He said he just refused to go. That his father owed him money for teaching classes, and he just did not answer the door."
At this time Nichols objected: "We object. We move to exclude. There has been no testimony about owing money to anyone." This objection was overruled by the trial court.
Rule 46, A.R.Civ.P., requires that a party state his grounds for any objection that he makes if he wishes to preserve as error the trial court's overruling of his objection. When the grounds for an objection are stated, this impliedly waives all other grounds for the objection to the evidence, State v.Johnston, 292 Ala. 545, 297 So.2d 368 (1974); Granberry v.Gilbert, 276 Ala. 486, 163 So.2d 641 (1964); and the objecting party cannot predicate error upon a ground not stated in the trial court, but raised for the first time on appeal, State v.Waller, 395 So.2d 37 (Ala. 1981). While it is true that a witness cannot be impeached by being contradicted on an immaterial matter, Goldin v. State, 271 Ala. 678, 127 So.2d 375
(1961), because Nichols failed to specify in any objection to Ms. Carpenter's testimony that impeachment was being allowed on an immaterial matter, Nichols waived that particular ground of objection, State v. Johnston, supra; Granberry v. Gilbert, supra. We will not reverse the trial court's overruling of the objection on a ground not stated before the trial court rules on the objection. Furthermore, a witness can be impeached by a contradictory statement relative to a matter that is material to the issues at trial, Noble v. State, 253 Ala. 519,45 So.2d 857 (1950); and, under the doctrine of curative admissibility, when testimony is injurious to a party against whom a witness has been called, that party has the right to contradict the witness's testimony about the matter testified to. C. Gamble,McElroy's Alabama Evidence, § 156.01(8) (3d ed. 1977). We conclude that Nichols's conduct preceding his confrontation with Guthrie was material, under the pleadings, to the issue of who *Page 663 
was the aggressor in the incident that resulted in Nichols's injury; even if it was not, Mark's testimony, which was elicited by Nichols — that Nichols was at most gently rapping on Mark's chamber door before he was pushed down the stairs by Guthrie — was injurious to Guthrie, and Guthrie, under the doctrine of curative admissibility, had the right to contradict Mark's testimony about that matter. Take the even or take the odd; either way, the trial court did not err.
The second issue was not properly preserved for appeal. Prior to any testimony being taken at the trial of this case, Nichols filed a "motion in limine"[1] requesting that the trial court allow him to introduce into evidence "specific acts of drunkenness and violence on the part of the defendant, Dennis Guthrie, done prior to the alleged assault and battery." The trial court overruled this motion; its order in its entirety was: "Motion in Limine is hereby overruled." Therefore, there is nothing to suggest that the trial court's pre-trial denial of Nichols's "motion in limine" was intended to exclude the offer of certain evidence during the trial of this case. Nichols did not attempt to introduce evidence of Guthrie's "drunkenness" or "violence" prior to the alleged assault and battery at the trial. Therefore, Nichols did not properly preserve this issue for appeal. Perry v. Brakefield,534 So.2d 602 (Ala. 1988); Robinson v. Kierce, 513 So.2d 1005 (Ala. 1987).
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and KENNEDY, JJ., concur.
[1] This was an attempt to obtain a certification that certain evidence would be admissible prior to trial, which, although styled "motion in limine," is not truly a motion in limine.Black's Law Dictionary 1013 (6th ed. 1990) defines a "motion in limine" as "[a] pretrial motion requesting court to prohibit opposing counsel from referring to or affirming evidence on matters so highly prejudicial to moving party that curative instructions cannot prevent predisposition and effect on jury."