This case involves the modification of a judgment of divorce.
Harold E. Taylor and Marie K. Taylor were divorced by a judgment of the Shelby County Circuit Court in October 1989, which incorporated and ratified an agreement between the parties. Pursuant to the judgment of divorce, the trial court, among other things, awarded the wife alimony in the amount of $400 per month, due on the first day of each month; awarded the husband the marital residence with the stipulation that he would sell the house and divide the proceeds equally between the parties; and ordered the husband to designate the wife as the irrevocable beneficiary of his Kodak Retirement Income Plan, Kodak Employee Stock Ownership Plan, Eastman Kodak Employee Savings and Investment Plan, and Group Life Insurance Program.
On July 30, 1992, the husband filed a petition to modify the judgment of divorce, alleging that a substantial and material change of circumstances had occurred and requesting relief from his obligation to pay alimony. On September 8, 1992, the wife filed an answer and counterclaim, denying that a change of circumstances had occurred and alleging that, during June, July, and August 1992, the husband had failed to make alimony payments totalling $1,200. Thereafter, on October 8, 1992, the wife filed a petition for rule nisi, seeking, among other things, payment of back alimony. On April 14, 1993, the wife filed an additional pleading, alleging that the amount of the alimony in arrears had grown to $4,664.
Following an ore tenus proceeding on April 14, 1993, the trial court entered an order on May 3, 1993, suspending the husband's obligation to make alimony payments until a further order of the court. Moreover, the trial court found that the husband was not in arrears of his alimony obligation.
The wife's post-judgment motion was denied, and she appeals, contending (1) that the trial court erred in excusing the husband from alimony payments that matured before he filed his petition to modify; (2) that in determining whether to modify the alimony payments, the trial court erred in considering the husband's actual earnings rather than his ability to earn and/or pay the alimony; and (3) that the trial court erred in failing to consider the husband's retirement account as a source of income with which to pay alimony.
We find the dispositive issue to be whether the trial court erred in modifying the alimony payments.
Initially, we note that the judgment of a trial court following an ore tenus proceeding is presumed correct on appeal and will not be set aside unless it is shown to be plainly and palpably wrong. Lucero v. Lucero, 485 So.2d 347
(Ala.Civ.App. 1986). A trial court's judgment in a modification proceeding will not be reversed unless there has *Page 973 
been an abuse of discretion. McCalla v. McCalla, 497 So.2d 509
(Ala.Civ.App. 1986). This court has held that "[w]hen . . . the decree fixing the amount of support is based on an agreement between the parties, the decree should not be modified except for clear and sufficient reasons and after thorough consideration and investigation." Tucker v. Tucker,588 So.2d 495 (Ala.Civ.App. 1991).
The burden is on the party seeking a modification of the periodic alimony award to show the trial court that a material change in the parties' circumstances has occurred since the trial court's last judgment or order. Glenn v. Glenn,626 So.2d 638 (Ala.Civ.App. 1993). In determining whether there has been a material change in circumstances, the trial court must consider the financial needs of the payee spouse and the financial ability of the payor spouse to respond to those needs. McCalla, supra. It is the payor spouse's ability to earn and pay the support rather than his actual income that is determinative. Wall v. Wall, 611 So.2d 1107 (Ala.Civ.App. 1992).
The record reveals that, at the time of the hearing, the husband was 58 years old and had a high school education. He was attending Florida College part-time while doing maintenance work there. The wife, 53 years old, was employed by the law firm of Barnett, Noble, Hanes, O'Neal and also worked part-time at Parisian. The wife testified that her employment circumstances are the same as they were at the time of the divorce, except that she earns somewhat more. However, she stated that she could not be certain how much more. The wife's annual gross wages totalled approximately $30,500 during 1992. The wife also testified that she recently had undergone surgery to remove a cancerous tumor from her leg, and that she was under medical supervision for a mass in her breast.
The husband testified that when he and the wife were divorced, he was an equipment service representative for Kodak. The husband also testified that, in early 1991, after 27 years with Kodak, his job was terminated because of a down-sizing, and he chose retirement rather than dismissal. In the year preceding his retirement, the husband earned approximately $45,000.
The husband testified that the money from his Kodak Retirement Income Plan, which totalled $122,954, had rolled over into an IRA account set up for him by Kodak in January 1991. Records from the Iuka Guaranty Bank that were introduced at the hearing revealed that by February 1993, the account had grown to $139,049.25 and was accruing $636.31 per month. Records from Kodak that were introduced at the hearing further showed that as of January 31, 1993, the husband's interest in the Kodak Employee Stock Ownership Plan was valued at $2,734.67, with receipt deferred until February 25, 2006. As of January 29, 1993, the husband's interest in the Kodak Employee Stock Ownership Plan was valued at $36,257.27, with receipt deferred until March 15, 2006. The husband admitted that he had spent some of the money from his Kodak employee benefit plans on house repairs.
After retiring from Kodak, the husband made $5,905 in approximately four months while loading trucks and making deliveries for J.R. Martin in Birmingham. However, he quit this job in late August 1991. The husband testified that he spoke to John Clark about repairing the machinery at John's Photo Service, but did not fill out an application for employment. He also spoke with someone in Tuscaloosa about repairing photographic equipment. However, he admitted that he has not filled out an application for employment since 1991.
In the fall of 1991, the husband went on an archaeological dig in Turkey for six weeks. When he returned, he moved to Temple Terrace, Florida, where he enrolled in Florida Bible College and began pursuing a Bible degree. At his present pace, he will complete his courses in 2001, when he will be 66 years old.
The husband testified that he earns approximately $5.50 per hour at his part-time maintenance job at the college. His gross earnings from this job during 1992 totalled $5,946.19. The total cost of his room, meals, and tuition is $8,900 per year. This amount represents the husband's only current obligation *Page 974 
other than those to his wife. Furthermore, although the husband's present expenses outweigh his earnings, his present budgetary imbalance differs little from the way it was at the time of the divorce, when his expenses exceeded his net earnings by the sum of $138.62 per month.
The husband admitted that, during the litigation preceding the divorce, he purchased a $45,000 house in Birmingham, on which he paid $31,000 in cash at the closing. Within a month thereafter, he signed interrogatories inquiring as to his real estate holdings, but he failed to disclose that he had bought the house in Birmingham.
Pursuant to the judgment of divorce, the husband sold the marital residence in May 1990. Each of the parties received approximately $76,000 from the sale. However, the husband testified that he had exhausted all of the $76,000 that he received. He stated that he had spent approximately $30,000 on supplies to repair the house before selling it. Further, he stated that he had spent approximately $3,000 on labor for the repairs. However, he admitted that he had no record of having bought supplies or having made repairs, that he had not accounted for the repairs to increase his basis in the house for tax purposes, and that he did not tell his ex-wife that he had made the repairs. The husband also testified that he took an additional $25,000 from the sale of the marital residence and invested it in a business venture in Georgia with Bob Dawdy, the husband's great uncle, who was 87 years old. The husband asserted that he lost all the money he had invested when Mr. Dawdy died, but he has no record of the transaction because he paid Mr. Dawdy in cash; no one was with the husband when the transaction took place, and he has not made a claim against Mr. Dawdy's estate. With the remaining $18,000, the husband says that he repaid the bank and his father, who had each loaned him $10,000 toward the $31,000 downpayment on the Birmingham house.
The husband testified that his sister, Marie Oakes, was renting out his Birmingham house to another couple, but he did not know what rental amount she was charging. He stated that Ms. Oakes takes care of paying the mortgage each month. Ms. Oakes testified that she has rented the house for $400 per month since August 1992, but she pays approximately $300 per month for the mortgage and utilities. She stated that she had paid the mortgage for over a year while the house was not occupied. Although the furniture inside the house belongs to the husband, he testified that his sister has not shared the rental profits with him; however, she did pay over $6,000 on his behalf when he was incarcerated for contempt of court in May 1991.
The record reveals that additional money has been available to the husband since the divorce. The husband received a $1,432 refund on his 1990 federal income tax, a $1,247.96 refund on his 1991 federal income tax, and a $596.05 refund on his 1992 federal income tax. On April 26, 1991, the husband removed $6,769.53 from a savings account at the Iuka Guaranty Bank. Also, the wife introduced a certificate of deposit issued by the Iuka Guaranty Bank and dated June 25, 1992, which the husband and his father held jointly with the right of survivorship. The certificate reflects a value of $66,500 and a maturity date of December 24, 1992. The husband testified that his father had died in September 1992.
After a careful review of the record, we conclude that the husband failed to show that a material change of circumstances had occurred. Notwithstanding the wife's admission that she now earns more than she did at the time of the divorce, the husband failed to show that her additional earnings constituted a material change that warranted a modification of his obligation to pay alimony. See Glenn,supra. Moreover, although the husband's current earnings are insufficient to support the alimony originally awarded to the wife, the record clearly shows that he is capable of earning an income that would support that amount, and that he has available to him sufficient assets with which to make the payments. See Wall, supra; McCalla, supra. The husband cannot circumvent his obligation to contribute to the support of the wife by voluntarily altering his financial condition. SeeStewart v. Stewart, 536 So.2d 91 (Ala.Civ.App. 1988);Robinson v. Robinson, 475 So.2d 880 (Ala.Civ.App. 1985). *Page 975 
Therefore, we conclude that the trial court erred in modifying the husband's alimony payments.
We note with regard to the first issue, i.e., whether the trial court erred in excusing the husband from alimony payments that matured before he filed his petition to modify, that payments of alimony and child support constitute final judgments from the date that they become due, and those payments that mature before the filing of a petition are immune from change. Glenn, supra. The record reveals that the husband stopped paying alimony after May 1992, but that he did not file his petition for modification until July 30, 1992; however, this issue is moot.
Based on the foregoing, the judgment of the trial court is hereby reversed, and the cause is remanded for the entry of a judgment on the wife's petition for rule nisi.
The wife's request for an attorney fee on appeal is granted in the amount of $500.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THIGPEN and YATES, JJ., concur.