In 1996, Fred Hall filed a complaint for a sale for division, alleging that he and Carolyn Duster had been unmarried cohabitants since 1974, that they had purchased a residence together, that each owned an undivided one-half interest in the property, and that the property could not be equitably divided. Carolyn Duster answered and counterclaimed for a divorce, alleging that she and Hall had a common-law marriage and requesting a division of marital property, alimony, and post-minority support for the parties' son.
After a bench trial, the circuit court determined that Hall and Duster had a common-law marriage. The court divorced the parties and awarded Duster the marital home, $150,000 alimony in gross, and a $5,000 attorney fee. Hall appeals.
Hall and Duster began dating in 1973. At that time, Hall told Duster that he was married to a woman in Florida, but that he was in the process of obtaining a divorce. Duster *Page 836 
replied by telling him that she did not want to "get serious" about him until he was divorced. In 1974, Hall told Duster that he was divorced and asked her if she wanted to live with him. According to Duster, Hall said that he had already been through two marriages "that didn't work out" and that he suggested they "just live together, common-law married for awhile" and later, perhaps, have a formal marriage ceremony. Duster said she agreed.
The parties began living together in late 1974, had a child in 1976, and bought a house together in 1988. They broke up in 1996. The record contains undisputed documentary evidence indicating that Hall was married to another woman, in Florida, on July 8, 1973, and that he was not divorced from her until August 30, 1993.
 I.
Hall argues that the trial court's determination that he and Duster had a common-law marriage was erroneous. He contends that, because he already had a wife in Florida to whom he was married from 1973 until 1993, he did not have the capacity to enter a common-law marriage with Duster in 1974 (when they began living together), and that there was no evidence that he and Duster intended to be married after 1993 (when he was able to marry again).
There are three requirements for a common-law marriage in Alabama. First, the parties must have the capacity to marry. Adams v. Boan, 559 So.2d 1084, 1087 (Ala. 1990). Next, they must presently agree to enter the marriage relationship. Brown v. Brown, 276 Ala. 153, 155, 159 So.2d 855, 856 (1964). No particular words are necessary to show the parties' present agreement to marry, and proof of the actual words of consent is not required. Waller v. Waller, 567 So.2d 869, 869 (Ala.Civ.App. 1990). An agreement may be inferred from the all the surrounding circumstances. Sloss-Sheffield Steel Iron Co. v. Watford, 245 Ala. 425, 17 So.2d 166
(1944). Finally, the parties must consummate the marriage; that is, they must live in such a way as to gain public recognition that they are living as husband and wife. Piel v. Brown, 361 So.2d 90, 93 (Ala. 1978); Beck v. Beck, 286 Ala. 692, 697, 246 So.2d 420, 426 (1971).
It is clear that if the parties attempt to marry while there is a legal impediment to the marriage, then the law presumes the existence of a common-law marriage if the parties continue to live together as husband and wife after the removal of the impediment. Smith v. Smith, 247 Ala. 213, 23 So.2d 605 (1945); Hill v. Lindsey, 223 Ala. 550, 552, 137 So. 395, 396 (1931). Hall is correct in asserting that he did not have the capacity to marry Duster before August 30, 1993, when his Florida marriage was ended by divorce. He is incorrect, however, in asserting that there was no evidence to support a finding that he and Duster had a common-law marriage after August 30, 1993, when the impediment to his marrying Duster was removed.
The evidence was highly disputed. Duster and her witnesses testified to facts from which one could infer that the parties considered themselves married, held themselves out as husband and wife, and were publicly recognized as a married couple. For example, Barry Curtis, a Florence police officer, testified that, in 1994, he stopped Hall on suspicion of DUI, and that on that occasion Hall referred to Duster as his "wife" (Officer Curtis knew Hall because Hall was an employee of the district attorney's office). Curtis also stated that he had heard Duster introduce Hall as her "husband," without objection by Hall. See Crosson v. Crosson, 668 So.2d 868, 871 (Ala.Civ.App. 1995) (the fact that a man "made no comment" when introduced as a woman's "husband" was taken as an objective manifestation of an intent to be married).
James Threet, Hall's employer, testified that Duster — who was known to Threet as Hall's wife — picked up Hall's paycheck every week. Clementine Davis, Hall's sister, said that Hall told people that Duster was his wife. Ned Fuqua, one of Hall's coworkers, stated that Hall often spoke of having a wife and child in Florence, Alabama. Morris Patterson, who was married to Duster's sister, testified that he considered Hall his brother-in-law. *Page 837 
Hall testified that he considered himself to be, and held himself out as, Duster's boyfriend, not her husband. He stated that his job required him to travel extensively and that he had a girlfriend in every state where he worked. He explained that he sent Duster money only to make sure that his son would be taken care of. He testified that, although the parties had a joint checking account, he filed his income tax returns as a single man. He said that in 1988, Duster "kicked him out of the bedroom" and that they had no sexual relationship after that. Duster admitted that after 1988 she and Hall had infrequent sexual relations, but she denied that they had no sexual relations. She explained that she was reluctant to have relations with Hall because she knew that he had not been faithful to her and she was worried about contracting the AIDS virus from him.
Sexual relations between the parties is not an indispensable element of cohabitation, see Beck v. Beck, 286 Ala. at 701,246 So.2d at 429. The trial court was authorized to conclude that Duster presented clear and convincing evidence that she and Hall had a common-law marriage after Hall was divorced in 1993. This court stated in Crosson v. Crosson:
 "[A man's] subjective intent, i.e., any unexpressed intent he may have had not to be married, must yield to the reasonable conclusion to be drawn from his objective acts such as his failure to dispute what appeared to be a marital relationship."
668 So.2d at 870.
 II.
Hall argues that the trial court erred by admitting several evidentiary items that, he claims, were either hearsay or were not properly authenticated. Hall first complains of the admission of a funeral program listing him as a "son-in-law" of Duster's deceased father. He argues that the program was inadmissible as not having been properly authenticated. At trial, however, he objected on the ground that the document was irrelevant.
 "Rule 46, Ala.R.Civ.P., requires that a party state his grounds for any objection that he makes if he wishes to preserve as error the trial court's overruling of his objection. When the grounds for an objection are stated, this impliedly waives all other grounds for the objection to the evidence, and the objecting party cannot predicate error upon a ground not stated in the trial court but raised for the first time on appeal."
Nichols v. Southeastern Property Management, Inc., 576 So.2d 660,662 (Ala. 1991). The funeral program was clearly relevant to the issue whether the parties had been recognized as husband and wife. See Bishop v. Bishop, 57 Ala. App. 619, 330 So.2d 443
(Ala.Civ.App. 1976).
 "The marriage relationship may be shown in any way that can be known by others, such as living together as man and wife, referring to each other in the presence of others as being in that relation, declaring the relation in various types of documents and transactions, sharing household duties and expenses, and generally engaging in `all of the numerous aspects of day-to-day mutual existence of married persons.'"
Id. at 621, 330 So.2d at 445.
Hall argues that an audiotape recording of a statement he made to a law enforcement officer indicating that he and Duster were married "by common law" was hearsay. That statement, however, is not to be treated as hearsay, because it was an admission by a "party opponent." See Rule 801(d)(2)(A), Ala. R. Evid.
At trial, Hall objected, on grounds of relevancy and lack of authentication, to the admission of various documents relating to the cash purchase of a house in Sheffield, Alabama, by Deborah Jarman, a woman Hall admitted was his current girlfriend. The documents were relevant to prove Duster's contention that Hall was trying to hide assets from her so that there would be less marital property to divide in the event the trial court divorced the parties. At trial, Hall admitted that he had filed a personal-injury lawsuit in New York seeking $3 million in damages, that the lawsuit had been settled, and that he had recently received his portion of the settlement *Page 838 
proceeds. He claimed that his portion was only slightly over $3,000, but he refused to provide the trial court, in response to a discovery order, with complete documentation as to the amount of the award. On cross-examination, he repeatedly denied telling others that he had received over $140,000 from the New York lawsuit or that he had given his girlfriend, Deborah Jarman, the funds with which to purchase the house in Sheffield. The trial court acted within its discretion in deciding that the documents relating to the real estate transaction (which were authenticated by the necessary witness, Deborah Jarman) were relevant to prove Hall's attempted secretion of assets from Duster.
Hall argues that the trial court erred by sustaining an objection to the following testimony by Hall's brother: "[Fred Hall] has told me that [he and Carolyn Duster] weren't sleeping together." The court's ruling was correct because the testimony was hearsay. See Brown v. Blount's Exterminating Co.,694 So.2d 8, 10 (Ala.Civ.App. 1997).
 III.
Hall contends that the trial court had no authority to award Duster alimony in gross in the amount of $150,000. We agree.
Alimony in gross is the present value of one spouse's inchoate rights in the marital estate, payable out of the other spouse's estate "as it exists at the time of the divorce." Hager v. Hager, 293 Ala. 47, 55, 299 So.2d 743, 750 (1974) (emphasis added).
An award of alimony in gross must be based on something more than mere speculation as to the worth of the marital estate and the value of a spouse's inchoate rights. See generally, Davis 
McCurley, Alabama Divorce, Alimony and Child Custody Hornbook, § 19-1 (3d ed. 1993). From all that appears in the record, we must conclude that the trial court's alimony award was not based upon any evidence as to the value of the marital property or as to the worth of Duster's inchoate rights. Instead, it appears that the alimony award was based on (1) the court's belief that Hall was not being truthful and forthcoming about the terms of the settlement of his lawsuit,[1] and (2) the court's decision to sanction Hall for his violation of the court's discovery order and for what, it considered, was Hall's recalcitrance at trial.
When Hall repeatedly claimed to have received only slightly over $3,000, to have spent that amount already, and to have provided the court with "all he had" regarding the terms of the settlement, the court obviously did not believe him. The trial court warned Hall that his failure to provide the specific details of the settlement of his personal-injury lawsuit would result in sanctions:
 "THE COURT: . . . There is a very serious issue on the floor regarding a lawsuit in New York. My records and involvement in this case indicate clearly the pretrial discovery was attempted to resolve all of these issues regarding exactly what you received through this settlement.
 "July 15th, I ordered the parties to appear. I held a scheduling conference, and I made an order on that day, Mr. Hall. And that order specifically ordered you by August the 15th, to make available to [Duster] specific details involving the settlement of the lawsuit in New York, and to provide documented proof of the exact amount of said moneys received, and, further, the present status of said moneys, and the specific use made of any of said moneys since receipt of same.
 "[Mr. Hall, you were] ordered to make available copies of any accounts where said moneys were deposited, and, further, provide documented account information showing any disposition of said assets since received.
 "Let me point out something to you, Mr. Hall. That order to me is extremely clear. Since I made that order, I received a response from the side that was to have that information that you had failed to comply with that order.
 "Now it's very clear to me today that we are going to start playing games right now *Page 839 
about this lawsuit. And I am not going to sit here and listen to that. Now, what I'm telling you is, we are going to get to the bottom of this lawsuit in New York City, or we are going to impose sanctions."
(Emphasis added.) The circuit court would have been authorized to impose sanctions against Hall if it found, based on evidence, that Hall had violated the court's discovery order, or to hold him in contempt if it found, based on evidence, that he had willfully failed to respond to the court's inquiries. Rules 37 and 70A, Ala.R.Civ.P. However, "[e]vidence which affords nothing more than mere speculation, conjecture or guess is wholly insufficient to warrant [a finding of fact]." Williams v. Palmer, 277 Ala. 188, 193, 168 So.2d 220, 224 (1964) (citations omitted). The trial court was not authorized to "invent" a value for the marital property or to "create" a figure representing the worth of Duster's inchoate rights. The trial court simply had no evidence before it from which to fashion the award of alimony in gross. The award is, therefore, arbitrary and constitutes an abuse of discretion.
 IV.
Hall insists that that the trial court abused its discretion by awarding Duster a $5,000 attorney fee, arguing that she did not request a fee in her pleadings and did not present any evidence as to the reasonable value of her attorney's services.
Rules 15(b) and 54(c), Ala.R.Civ.P., allow the trial court to award a party relief that the party has not specifically requested in his or her complaint. Beason v. Beason,571 So.2d 1155 (Ala.Civ.App. 1990). See Hodson v. Hodson, 276 Ala. 227,160 So.2d 637 (1964). Moreover, the trial court may properly "rely on its own knowledge and experience as to the value of the legal services performed." Hammond v. Hammond, 500 So.2d 27, 29
(Ala.Civ.App. 1986). We find no abuse of discretion in the award of the attorney fee.
That portion of the trial court's judgment divorcing the parties is affirmed. That portion of the judgment awarding the wife an attorney fee is also affirmed. However, that portion of the judgment awarding the wife alimony in gross in the amount of $150,000 is reversed and the cause is remanded for further proceedings based on the evidence already admitted. The trial court may award alimony in gross if that award is supported by the existing evidence. It is not authorized to take additional evidence.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
Robertson, P.J., and Yates, Monroe, and Thompson, JJ., concur.
[1] Hall does not argue that the proceeds of a personal-injury lawsuit do not constitute marital property, cf. Golden v. Golden,681 So.2d 605 (Ala.Civ.App. 1996), and we, therefore, do not address that issue.