THOMAS, Judge.
 

 This is the second time these parties have been before this court.
 
 See Henning v. Henning,
 
 999 So.2d 523 (Ala.Civ.App.2008). The pertinent procedural history was summarized in
 
 Henning:
 

 
 *452
 
 “Doris L. Henning (‘the former wife’) and Terry L. Henning (‘the former husband’) were divorced in May 2003. The judgment of divorce required the former husband to pay the former wife monthly alimony in the amount of $3,500, to maintain health-insurance coverage on the former wife through COBRA as long as permitted by law, and to maintain the former wife as an irrevocable beneficiary of one-half of the proceeds of any life-insurance policy he currently had in existence and, in the event that the existing policy was terminated for any reason, to maintain the former wife as a beneficiary of a policy of equal value. In July 2005, the former husband moved to terminate, suspend, or reduce his alimony, health-insurance, and life-insurance obligations under the divorce judgment because he was being dismissed from his employment effective August 1, 2005. The former husband later amended his motion to report that he could continue to make the monthly alimony payment through December 2005 but that he had lost his health insurance and life insurance when he was dismissed from his employment. The former wife objected to the former husband’s request that his obligations under the divorce judgment be terminated and moved to hold the former husband in contempt for failing to pay alimony during the pendency of his motion.
 

 “After a trial, the trial court entered a judgment that reduced the former husband’s alimony obligation to $1,750 per month and held the former husband in contempt for failing to pay alimony as requested by the former wife; the trial court permitted the former husband to purge himself of contempt by complying with all orders of the court. In addition, the trial court awarded the wife a $17,500 alimony arrearage and awarded the former wife’s attorney $1,000 to be applied to his fee. The judgment did not address the former husband’s obligation to maintain a life-insurance policy naming the former wife as a beneficiary or his obligation to maintain health insurance on the former wife pursuant to COBRA. However, the former husband testified, and the former wife did not refute, that the former husband had paid the COBRA premiums for 36 months, the amount of time that the former wife was eligible for coverage pursuant to COBRA; thus, the former husband’s health-insurance obligation expired pursuant to the terms Of the divorce judgment. Both parties filed timely postjudgment motions. The former wife argued in her postjudgment motion that the trial court had failed to rule on whether the former husband would continue to be required to maintain a life-insurance policy naming the former wife as a beneficiary; the former husband argued in his postjudgment motion that he was unable to pay even the reduced amount of alimony the trial court had ordered. After a hearing on the postjudgment motions, the trial court denied them both. Both parties appeal[ed].”
 

 Henning,
 
 999 So.2d at 524-25.
 

 We dismissed the parties’ first appeals because the trial court had failed to address the request by Terry L. Henning (“the former husband”) that he be relieved of his obligation to maintain a life-insurance policy on his life naming Doris L. Henning (“the former wife”) as an irrevocable beneficiary.
 
 Id.
 
 at 525-26. After our dismissal of the appeal, the trial court, on August 8, 2008, entered a judgment relieving the former husband of that obligation, and the former wife again appealed. The former husband, although he filed a brief in which he characterized himself as a cross-appellant and in which he pre
 
 *453
 
 sented the issue he had raised in his cross-appeal in the former appeal, did not appeal from the August 8, 2008, judgment entered after our dismissal of the first appeals. Thus, we granted the former wife’s motion to strike his brief insofar as it purported to present an issue on cross-appeal.
 

 The former wife first argues on appeal that the trial court erred by reducing the former husband’s alimony obligation. The former wife relies on the principle that it is the ability to earn of the supporting spouse and not necessarily his or her actual income upon which a decision to reduce alimony should be based.
 
 See, e.g., Taylor v. Taylor,
 
 640 So.2d 971, 973 (Ala.Civ.App.1994). She further argues that the trial court also erred by terminating the former husband’s obligation to maintain a life-insurance policy naming her as an irrevocable beneficiary. The former wife argues that the provision in the divorce judgment requiring the former husband to name her as an irrevocable beneficiary of a life-insurance policy was either an alimony-in-gross provision or a part of the property settlement between the parties and, therefore, was not modifiable.
 
 See, e.g., Rose v. Rose,
 
 496 So.2d 85, 86 (Ala.Civ.App.1986).
 

 The only witnesses at the trial were the former husband and the former wife. Several exhibits were admitted into evidence; however, the exhibits were apparently lost, and the parties have provided this court with only certain replacement exhibits consisting mainly of bank statements and composite exhibits totaling bank deposits for several years. The depositions of the former husband and his current wife, which were admitted at trial, are not included in the exhibits on appeal. The former wife’s exhibit outlining her expenses is also missing from the record. Although the former wife appended certain exhibits to her brief, we are precluded from considering those items because they are not contained in the record on appeal.
 
 See Goree v. Shirley,
 
 765 So.2d 661, 662 (Ala.Civ.App.2000) (reiterating the principle that “[t]he record on appeal cannot be supplemented or enlarged by the attachment of an appendix to an appellant’s brief’). We note that “[wjhere ... evidence before the trial court ... is not preserved for the appellate court, the evidence is conclusively presumed to support the trial court’s [judgment].”
 
 White v. White,
 
 589 So.2d 740, 743 (Ala.Civ.App.1991).
 

 The former husband, who was 61 years old at the time of trial in November 2006, testified that he had been employed at the time of the parties’ divorce by McKesson Corporation as a software engineer earning a salary of $140,000 per year. In August 2005, the former husband was dismissed from his employment with McKes-son and Robbins; however, as part of his negotiated severance package, he was paid his salary until January 26, 2006. The former husband paid his last alimony payment in January 2006. According to the former husband, the life-insurance policy naming the former wife as a beneficiary was terminated in August 2006, when he was dismissed from employment.
 

 When questioned about his health, the former husband replied that he had high blood pressure and heart problems and that he might have had one minor stroke. According to the former husband, his health problems have affected his short-term memory, making his recall of details difficult. He explained that he had been hospitalized three times in the five years preceding the trial in November 2006. Later, on cross-examination, the former husband was confronted with his prior deposition testimony in which he had answered in the affirmative when asked if his health problems had existed before the divorce. However, the former husband
 
 *454
 
 was unable to state when he began experiencing problems with his memory.
 

 The former husband could not recall whether he had inquired about converting his life-insurance policy from a group policy to an individual policy when he was dismissed from his employment. He did testify that he had looked into getting a replacement policy by calling one insurance agent; according to the former husband, his health and age were impediments to getting a replacement policy. However, the former husband admitted that his current wife had obtained a life-insurance policy on his life after they married in late 2003 or in 2004. The former husband explained that his current wife had contacted an insurance agent who came to their house in order to obtain that policy. The former husband did testify that, although he could not find replacement insurance, he would be willing to look for some affordable life insurance if it were available to him.
 

 A review of the former husband’s bank accounts by the former wife revealed that more income than was reported on his joint annual tax return was being deposited in the former husband and his current wife’s joint account each year. The amount of the difference varied from approximately $73,000 in 2004 to $147,000 in 2005. The former husband explained that some of the larger deposits in 2005 were from the sale of a beach condominium or from the sale of stock options that he had been required to sell upon his dismissal from employment. He explained that other specific deposits that he was questioned about were transfers from his savings account. The amount of money in the former husband’s savings account was not disclosed in the record.
 

 The former husband insisted that he did not have any remaining stock options, although the former wife’s attorney questioned him about a document indicating the existence of stock options. As noted above, the trial exhibits were lost; the document from the former husband’s employer referencing stock options is also not an exhibit in the record on appeal. The former husband further testified that he had not transferred any money from his business account, which will be discussed in more detail below, into his personal account.
 

 Regarding his employment search after his dismissal from McKesson and Robbins, the former husband explained that he had looked in the newspaper for about six weeks after he became unemployed. According to the former husband, he could not find any jobs “at his level,” so he decided no jobs were available for him. He said that he had considered purchasing a franchise, but neither of the two particular franchises he had been interested in worked out. Finally, the former husband explained that he had decided to make his lapidary, or gem-cutting, hobby a business.
 

 The former husband said that he had invested $60,000 in his new business, Al-gemco, which had not yet turned a profit. Despite this fact, the former husband said that he was going to continue to “work at it.” Notably, the former husband failed to produce financial business records pertaining to Algemco at his deposition, except for one monthly bank statement for September 2006. The former husband explained his lack of records for his lapidary business, which involves purchases of rough gemstones from places like Africa and which involves wire transfers of thousands of dollars, as a failure to get as organized as he should be. However, he explained that he could get the records from the bank if he needed them.
 

 Regarding other sources of income, the former husband testified that he would be eligible for Social Security benefits in Feb
 
 *455
 
 ruary 2007. According to him, he would receive $1,400 per month in benefits once he began drawing them. He further testified that the former wife would also be eligible for Social Security benefits at that time and that she would receive the same amount of benefits.
 

 The former wife, who was 61 years old at the time of the November 2006 trial, testified that she had developed a bone spur and bursitis in her right hip after the divorce. She also suffers from scoliosis of the spine and two herniated disks. The former wife said that she needed surgery to address those conditions but that she could not afford it. Because of her back and hip problems, the former wife cannot stand or sit for any length of time, which causes her difficulty in her work as a teacher. To alleviate her discomfort and to be able to work, the former wife takes prescription-strength ibuprofen and a prescription muscle relaxer.
 

 The former wife had resumed part-time substitute teaching after the divorce. However, after the former husband ceased paying alimony in January 2006, the former wife sought and obtained a full-time teaching position beginning in August 2006. She earns, after taxes and insurance, $2,100 per month. However, she noted that she was a first-year, nontenured teacher and that she had no guarantee of continued employment.
 

 After the divorce, the former wife sold the marital residence and used the proceeds from the sale to purchase a more modest home. Her house payment is $969.07 per month; the total amount she pays, including principal, interest, taxes, and insurance, is $1,214.90 a month. She also has an automobile payment, the amount of which is not in the record. As noted above, copies of only some of the many exhibits presented at trial were provided after the original exhibits were lost; the former wife’s budget is not among those exhibits provided to this court.
 

 We begin our review with the oft-repeated principle that a modification of periodic alimony is a matter committed to the sound discretion of the trial court.
 
 Kiefer v. Kiefer,
 
 671 So.2d 710, 711 (Ala. Civ.App.1995). Because the trial court did not make specific findings of fact in its judgment reducing the former husband’s alimony obligation, we presume that the trial court made those findings that would be necessary to support its judgment, provided, of course, that the evidence would support those implicit findings.
 
 Ederer v. Ederer,
 
 900 So.2d 427, 428 (Ala.Civ.App.2004) (citing
 
 Ex parte Bryowsky,
 
 676 So.2d 1322, 1324 (Ala.1996)). Although a trial court’s judgment on an alimony-modification petition is presumed correct, this court can reverse a trial court’s judgment if it is not supported by the evidence, is plainly and palpably wrong, and amounts to an abuse of discretion.
 
 O’Neal v. O’Neal,
 
 678 So.2d 161, 164 (Ala.Civ.App. 1996). We must be mindful, however, that we are “charged only with determining whether the evidence was sufficient to support the trial court’s judgment” and not with determining if there was a sufficient basis for a different judgment than that entered by the trial court.
 
 Ex parte Ederer,
 
 900 So.2d at 426.
 

 “The burden is on the party seeking a modification of the periodic alimony award to show the trial court that a material change in the parties’ circumstances has occurred since the trial court’s last judgment or order.
 
 Glenn v. Glenn,
 
 626 So.2d 638 (Ala.Civ.App.1993). In determining whether there has been a material change in circumstances, the trial court must consider the financial needs of the payee spouse and the financial ability of the payor spouse to respond to those needs.
 
 MeCalla[ v.
 
 
 *456
 

 McCalla,
 
 497 So.2d 509 (Ala.Civ.App.1986) ]. It is the payor spouse’s ability to earn and pay the support rather than his actual income that is determinative.
 
 Wall v. Wall,
 
 611 So.2d 1107 (Ala.Civ.App.1992).”
 

 Taylor v. Taylor,
 
 640 So.2d 971, 973 (Ala.Civ.App.1994). In making its determination, a trial court should still consider the earning capacity of each spouse, the payee spouse’s need for alimony, the payor spouse’s ability to pay alimony, and each spouse’s estate.
 
 Kiefer,
 
 671 So.2d at 711.
 

 The former husband demonstrated that he had lost his employment and that he had suffered a significant loss of income. Based on those facts, the trial court determined that the former husband should not be required to pay the former wife $3,500 in alimony every month. The former wife argues that the trial court erred by considering the former husband’s income instead of focusing on his
 
 ability to earn,
 
 which the former wife indicates was unchanged from the time of the divorce. The former wife is correct in arguing that “the law is concerned with one’s ability to earn, as opposed to actual earnings, in deciding whether periodic alimony should be terminated, increased, or reduced in modification proceedings.”
 
 Cox v. Cox,
 
 485 So.2d 767, 768 (Ala.Civ.App.1986);
 
 see also Warner v. Warner,
 
 693 So.2d 487, 489 (Ala.Civ.App.1997);
 
 Taylor v. Taylor,
 
 640 So.2d at 973;
 
 Maddox v. Maddox,
 
 612 So.2d 1222, 1223-24 (Ala.Civ.App.1992);
 
 Wall v. Wall,
 
 611 So.2d 1107, 1109 (Ala.Civ.App.1992); and
 
 Prentice v. Prentice,
 
 440 So.2d 1091, 1093 (Ala.Civ.App.1983).
 

 The former wife relies heavily on
 
 Taylor
 
 as support for her argument in favor of reversing the trial court’s reduction of the former husband’s alimony obligation. This court did reverse a trial court’s judgment suspending the husband’s obligation to make alimony payments in
 
 Taylor,
 
 relying in large part on the principle that the husband’s earning capacity and not his actual income should be used to determine whether suspension of his obligation was warranted.
 
 Taylor,
 
 640 So.2d at 974. The husband in
 
 Taylor
 
 had retired during a downsizing by his employer and had ultimately chosen to pursue Bible studies and to work part time during his educational pursuits.
 
 Taylor,
 
 640 So.2d at 973. Because we determined that the husband had failed to prove a material change of circumstances, that he was capable of earning an income sufficient to pay alimony, and that he had available sufficient assets from which to pay his alimony obligation, we reversed the trial court’s judgment suspending the husband’s obligation to pay alimony.
 
 Id.
 
 at 974.
 

 In contrast, this court did not reverse a trial court’s judgment reducing a husband’s alimony obligation based upon a sharp reduction in his income in
 
 White,
 
 589 So.2d at 742-43. The facts in
 
 White
 
 are markedly similar to those in the present case. The husband in
 
 White
 
 had been employed making a substantial salary when his employer filed for bankruptcy.
 
 Id.
 
 at 742. After he was dismissed from his employment, the husband sought another position, but was unsuccessful.
 
 Id.
 
 He then decided to pursue a career as a real-estate agent; however, he had not yet earned income from his efforts at the time of the trial.
 
 Id.
 
 Although we noted that the trial court had apparently considered the husband’s decreased income even though “there is no evidence that his
 
 ability
 
 to earn has been irrevocably diminished,” we still did not find the reduction of his alimony obligation, as opposed to its termination, to be error on the part of the trial court.
 
 Id.
 
 at 742.
 

 In the present case, the former husband’s testimony was that he could not find a position “at his level” after six
 
 *457
 
 weeks of searching, that he had considered but rejected the idea of opening a franchise, and that he had decided to convert his lapidary hobby into a business venture. The former husband further testified that he had not yet made a profit in his new business venture. In addition, the former husband’s testimony revealed that he suffers from heart and blood-pressure conditions, that he has suffered three heart attacks and a minor stroke, and that his short-term memory has been negatively affected by his health conditions. The trial court apparently believed that the former husband could not find a suitable position after he was dismissed from McKesson and Robbins and that the former husband’s health concerns had impacted his ability to seek employment. Thus, the trial court must have concluded that the former husband’s ability to earn had been negatively impacted to an extent requiring the reduction of his monthly alimony obligation to $1,750, or half of the original obligation of $3,500. Although the evidence could have supported a different result, we are concerned only with whether the evidence supports the judgment entered; we cannot substitute our judgment for that of the trial court.
 
 Ex parte Ederer,
 
 900 So.2d at 426.
 

 As another ground for reversing the trial court’s judgment reducing the former husband’s alimony obligation, the former wife argues that the trial court erroneously admitted the former husband’s testimony that the former wife would be eligible to receive $1,400 per month in Social Security benefits in February 2007. The question and objections appear in the record as follows:
 

 “Q. Will Doris be eligible [for Social Security benefits] at the same time, your ex-wife?
 

 “MR. BOONE [counsel for the former wife]: I object to that, Judge.
 

 “MR. BRISKMAN [counsel for the former husband]: If he knows.
 

 “THE COURT: He can answer if he knows.
 

 “THE WITNESS: Yes, sir.
 

 “MR. BOONE: It would be hearsay.
 

 “THE COURT: Go ahead.”
 

 We first note that the former wife’s
 
 timely
 
 objection to the question asked by the former husband’s attorney at trial did not assign a specific ground, which is required to preserve an evidentia-ry error for appellate review.
 

 “ ‘Rule 46, Ala. R. Civ. P., requires that a party state his grounds for any objection that he makes if he wishes to preserve as error the trial court’s overruling of his objection. When the grounds for an objection are stated, this impliedly waives all other grounds for the objection to the evidence, and the objecting party cannot predicate error upon a ground not stated in the trial court but raised for the first time on appeal.’ ”
 

 Hall v. Duster,
 
 727 So.2d 834, 837 (Ala.Civ.App.1999) (quoting
 
 Nichols v. Southeast Prop. Mgmt., Inc.,
 
 576 So.2d 660, 662 (Ala.1991)). The former wife’s hearsay objection, lodged after the former husband had answered the question, came too late.
 
 Johnson v. Johnson,
 
 883 So.2d 690, 691 (Ala.Civ.App.2003) (quoting
 
 L.A.C. v. State Dep’t of Human Res.,
 
 890 So.2d 1026, 1031 (Ala.Civ.App.2003)) (“ ‘It is well settled that an objection that comes after the witness’s answer is too late.’ ”). On appeal, the former wife argues yet another ground — that the testimony was speculation and conjecture. Because that particular ground for the former wife’s objection was not raised in the trial court, we cannot consider it on appeal.
 
 Hall,
 
 727 So.2d at 837.
 

 
 *458
 
 The former wife next argues that the trial court erred by terminating the former husband’s obligation to maintain a life-insurance policy on his life naming the former wife as an irrevocable beneficiary. As the former wife correctly states, the provision in the divorce judgment requiring the former husband to maintain a life-insurance policy naming her as an irrevocable beneficiary is treated as either an award of alimony in gross or as part of a property division.
 
 Rose,
 
 496 So.2d at 86; and
 
 Slaton v. Slaton,
 
 455 So.2d 34, 34 (Ala.Civ.App.1984). Because of its characterization as either an award of alimony in gross or as a part of the property division, the insurance provision is nonmodifiable after the lapse of 30 days from the entry of the divorce judgment.
 
 Id.
 
 The trial court erred by terminating the former husband’s obligation to maintain a life-insurance policy for the benefit of the former wife.
 

 Based on the evidence at trial, the trial court had before it sufficient evidence from which it could have concluded that the former husband had suffered a loss of actual income necessitating the reduction of his alimony obligation despite the fact that he had not necessarily suffered a diminished ability to earn.
 
 See White,
 
 589 So.2d at 742. Because our review is limited to determining whether the evidence supports the trial court’s judgment,
 
 Ex parte Ederer,
 
 900 So.2d at 426, we affirm that portion of the trial court’s judgment reducing the former husband’s monthly alimony obligation to $1,750. We were unable to consider the former wife’s eviden-tiary issue because she failed to assert in the trial court the same ground she asserted on appeal for her objection.
 
 Hall,
 
 727 So.2d at 837. However, we must reverse that portion of the trial court’s judgment terminating the former husband’s obligation to maintain a life-insurance policy naming the former wife as an irrevocable beneficiary because that provision, which was either an award of alimony in gross or a part of the property settlement between the parties, was
 
 no longer
 
 subject to modification.
 
 See Rose,
 
 496 So.2d at 86.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ„ concur.