MOORE, Judge.
 

 Patrick Watson, the administrator of the estate of Ted Watson (“the estate”), appeals from a summary judgment entered by the Coffee Circuit Court (“the trial court”) holding that Ted Watson (“Watson”) and Gina Bowden were common-law married. We reverse and remand.
 

 Facts and Procedural History
 

 On February 2, 2007, Bowden filed a “petition for protective order of joint marital estate of common law spouse” in the trial court. In that petition, Bowden asserted that she had been the common-law spouse of Watson, who had died on January 25, 2007, and that she and Watson had acquired joint marital property during the pendency of their common-law marriage, and she requested that the court issue a protective order to protect the assets of her marital union with Watson. The trial court issued a temporary ex parte order on March 5, 2007, in which it restrained and enjoined all persons making a claim to be an heir of the estate from removing or using any assets of the estate and from transferring, concealing, or selling any property of the estate pending further orders of the trial court.
 

 On May 2, 2007, Patrick Watson, as the administrator of the estate (hereinafter sometimes referred to as “the administrator”) filed a “motion to dismiss/answer” in which he asserted, among other things, that the trial court was without jurisdiction to enter the protective order requested by Bowden because, he said, the administration of the estate had not been initiated when Bowden’s petition had been filed or when the temporary ex parte order had been entered. Attached to the motion to dismiss was a copy of a “petition for administrator ad litem” that had been filed by Patrick Watson in the Coffee Probate Court, indicating that Watson was unmarried at the time of his death; a copy of an order entered by the Coffee Probate Court on January 26, 2007, appointing Patrick Watson as administrator ad litem for the estate; a copy of a petition for letters of administration that had been filed by Patrick Watson in the Coffee Probate Court on February 23, 2007; and a copy of an order entered by the Coffee Probate Court on March 7, 2007, granting letters of administration for the estate to Patrick Watson. The trial court entered an order on July 19, 2007, finding that letters of administration had been issued to Patrick Watson and granting the motion to dismiss.
 

 Bowden filed a complaint in the trial court on August 8, 2007, seeking a judgment declaring that she had been Watson’s common-law wife. On March 5, 2008, Bowden filed a motion to remove the administration of the estate from the Coffee Probate Court to the trial court. The trial court entered an order on March 27, 2008, granting Bowden’s motion and removing the administration of the estate to the trial court. On November 6, 2008, the administrator filed an answer to Bowden’s complaint for a declaratory judgment, denying that Bowden had been the common-law wife of Watson.
 

 The trial court entered an order on February 11, 2009, moving the case to the civil
 
 *95
 
 jury docket. On March 11, 2009, Bowden filed a motion for a summary judgment. Attached to that motion, Bowden submitted her affidavit, which asserted, among other things, that she had been Watson’s common-law wife, that she and Watson had lived together as husband and wife and had presented themselves to the public as such, that Watson had signed many documents relating to his employment and had listed Bowden as his spouse on those documents, and that Bowden had held an automobile insurance policy that had listed Watson as her spouse. Bowden submitted a number of other documents in support of her motion, including an “affidavit of common-law marriage” signed by Bowden and Watson on October 21, 2005, for the purpose of enrolling Bowden, as Watson’s spouse, in a group insurance plan provided through Watson’s employer; at least two other insurance documents signed by Watson on November 15, 2005, and January 4, 2007, the first of which listed Watson as being married and named Bowden as his spouse and as his beneficiary for life insurance and personal-accident insurance and the latter of which listed Watson’s marital status as “common-law” and identified Bowden as his dependent for medical-insurance purposes; an application submitted by Bowden for automobile insurance listing Watson as Bowden’s spouse; a statement of current eligibility from Watson’s insurance company dated January 30, 2007, listing Bowden as Watson’s spouse; and a statement of patient information for “Southern Sleep Clinics” completed by Bowden on June 5, 2006, in which she listed Watson as her spouse. Bowden submitted her 2004, 2005, and 2007 federal income-tax returns, which listed Bowden as head of household, rather than married and filing either jointly or separately. Her 2006 federal income-tax return, however, listed Bowden as married and filing separately from her husband, Watson.
 

 The administrator filed a reply to Bow-den’s summary-judgment motion on April 2, 2009; attached to that reply were the affidavits of Karen Eads, Kim Hutchinson, and the administrator. Eads stated in her affidavit that she had been Watson’s next-door neighbor from 2003 until his death; that Watson had told her and her husband in 2004 that his girlfriend, Bowden, may be living with him for a while; that Bowden’s children had rarely been at Watson’s house; that Bowden had moved in and out of Watson’s house for a few weeks at a time on multiple occasions between 2004 and the end of 2006; that, from Eads’s observation, there had never been a permanent or continuous relationship between Bowden and Watson; that Watson had informed Eads that Bowden’s “situation was not good and that he was trying to help her as much as he could”; that Bow-den had moved out of Watson’s house before he died; that Watson had not stated that he and Bowden had married or were married and that Watson had never referred to Bowden as his spouse; that Watson had “made the statement that he and [Bowden] had not gotten married”; and that Eads had not considered Bowden and Watson to be married. Hutchinson stated in her affidavit that she was the office manager for Dobbs Eye Clinic, where Watson had been a patient; that Watson had updated his records with Dobbs Eye Clinic on March 9, 2006, but had not listed a spouse in that update; and that the clinic’s records indicated that Watson’s marital status had been “single.”
 

 The administrator stated in his affidavit, among other things, that he was Watson’s nephew; that Bowden and Watson had not lived together continuously between late 2004 and 2006, although Bowden had stayed at Watson’s house “off an on” during that time; that Watson had referred to Bowden as his girlfriend and had stated
 
 *96
 
 that he knew he and Bowden would never get married; that Watson had never told the administrator that he considered Bow-den to be his wife; that Watson had not shared a bank account with Bowden; that Watson had paid for his house, automobiles, boats, personal living expenses, and household expenses from his separate account and that the administrator had not found any deposits into that account made my Bowden; that the administrator had found no property jointly owned by Bow-den and Watson; that Watson had filed tax returns indicating that he was single or unmarried in 2005 and 2006; that Watson had represented to the administrator and other family members that he was single; and that, between 2004 and 2006, Watson and Bowden had not maintained a continuous permanent relationship to the exclusion of all other relationships.
 

 The administrator attached to the reply to Bowden’s summary-judgment motion Watson’s federal income-tax returns from 2004 and 2005, both of which indicated that Watson was single rather than married. The administrator also attached to the reply, among other documents, an insurance document dated September 15, 2005, insuring Watson’s boat, which indicated that Watson was single; an automobile-insurance application dated July 30, 2004, listing Watson as single; a warranty deed dated October 1, 2004, indicating that Watson was single at that time; a deposit-account agreement signed by Watson on November 6, 2006, opening a single-party account at Community Bank; and checks written by Watson on another account at Community Bank, dating from September 5, 2005, until September 27, 2006, listing only Watson as the account holder.
 

 The trial court entered a judgment on April 7, 2009, granting Bowden’s summary-judgment motion and stating, in pertinent part:
 

 “[T]he Court having reviewed and considered said summary judgment motion, the [administrator’s] reply in opposition, and the respective evidentiary submissions in support thereof, finds that there is
 
 no genuine issue,
 
 as to any material fact and [Bowden] is entitled to a judgment as a matter of law. More specifically, the Court finds that [Bowden’s] affidavit, considered along with the ‘Affidavit of Common Law Marriage’ executed by [Watson] and ... Bowden on October 21, 2005, and other competent proof, is fully and completely dispositive of the issue before the Court.”
 

 The administrator filed his notice of appeal to this court on April 28, 2009.
 

 Standard of Review
 

 “We review the trial court’s entry of a summary judgment de novo, and our standard of review is well settled.
 

 ‘“In reviewing the disposition of a motion for summary judgment, “we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact,”
 
 Bussey v. John Deere Co.,
 
 531 So.2d 860, 862 (Ala.1988), and whether the movant was “entitled to a judgment as a matter of law.”
 
 Wright v. Wright,
 
 654 So.2d 542 (Ala.1995); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that there is no genuine issue of material fact, the burden shifts to the nonmovant to present substantial evidence creating such an issue.
 
 Bass v. SouthTrust Bank of Baldwin County,
 
 538 So.2d 794, 797-98 (Ala.1989). Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.”
 
 Wright,
 
 654
 
 *97
 
 So.2d at 543 (quoting
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989)). Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant.
 
 Wilma Corp. v. Fleming Foods of Alabama, Inc.,
 
 613 So.2d 359 (Ala.1993);
 
 Hanners v. Balfour Guthrie, Inc.,
 
 564 So.2d 412, 413 (Ala.1990).’ ”
 

 Hollingsworth v. City of Rainbow City,
 
 826 So.2d 787, 789 (Ala.2001) (quoting
 
 Hobson v. American Cast Iron Pipe Co.,
 
 690 So.2d 341, 344 (Ala.1997)).
 

 Discussion
 

 On appeal, the administrator argues that the trial court erred in granting Bowden’s summary-judgment motion because, he argues, the trial court ignored the conflicts in the evidence presented by both parties, which indicated that, at times, both Bow-den and Watson had represented themselves as being single. The administrator argues that, because the evidence was in conflict, a genuine issue of material fact existed as to whether the parties were common-law married, that that is a question for the jury to decide, and, thus, summary judgment was inappropriate.
 

 “In Alabama, recognition of a common-law marriage requires proof of the following elements: (1) capacity; (2) present, mutual agreement to permanently enter the marriage relationship to the exclusion of all other relationships; and (3) public recognition of the relationship as a marriage and public assumption of marital duties and cohabitation.”
 
 Gray v. Bush,
 
 835 So.2d 192, 194 (Ala.Civ.App.2001). “Courts of this state closely scrutinize claims of common-law marriage and require clear and convincing proof thereof.”
 
 Baker v. Townsend,
 
 484 So.2d 1097, 1098 (Ala.Civ.App.1986). ‘Whether the essential elements of a common-law marriage exist is a question of fact.”
 
 Gray,
 
 835 So.2d at 194.
 

 In
 
 Coleman v. Aubert,
 
 531 So.2d 881 (Ala.1988), cited by the administrator, the Alabama Supreme Court reversed the trial court’s summary judgment in favor of the executrix of Stinson’s estate because, the supreme court determined, a question of fact existed as to whether Stinson and Coleman had been common-law married. In doing so, the supreme court stated:
 

 “The legal capacity of [Stinson] and Coleman to marry is not in question. Although some of the evidence contained in the affidavits and deposition testimony ... is of questionable admissibility, there is admissible evidence that [Stin-son] and Coleman agreed to enter into a marriage relationship. There is also admissible evidence of public recognition of the existence of the marriage, as well as admissible evidence of cohabitation and a mutual assumption openly of the marital duties and obligations. It is true, as the executrix [of Stinson’s estate] contends, that many of the criteria indicative of the existence of a common-law marriage are not evidenced in this case; however, there is enough evidence to create a fact question as to whether Coleman was the common-law husband of [Stinson].”
 

 Id.
 
 at 885.
 

 As in
 
 Coleman,
 
 the capacity of either Bowden or Watson to marry is not in question in the present case. The remaining criteria for a common-law marriage, however, must still be met.
 

 Both Watson and Bowden signed an affidavit representing that they were common-law married on October 21, 2005; although that document would support a finding that Watson and Bowden were in
 
 *98
 
 mutual agreement at that time to permanently enter the marriage relationship, that document is not conclusive.
 
 See Stringer v. Stringer,
 
 689 So.2d 194, 197 (Ala.Civ.App.1997) (although both parties asserted in pleadings that they were common-law married, referred to each other as “husband” and “wife,” had children together, and cohabited, trial court was not required to conclude that a common-law marriage existed). In order for there to have been a common-law marriage between Bowden and Watson, there must also have been public recognition of the relationship as a marriage and public assumption of marital duties and cohabitation.
 

 “ ‘The marriage relationship may be shown in any way that can be known by others, such as living together as man and wife, referring to each other in the presence of others as being in that relation, declaring the relation in various types of documents and transactions, sharing household duties and expenses, and generally engaging in “all of the numerous aspects of day-to-day mutual existence of married persons.” ’ ”
 

 Hall v. Duster,
 
 727 So.2d 834, 837 (Ala.Civ.App.1999) (quoting
 
 Bishop v. Bishop,
 
 57 Ala.App. 619, 621, 330 So.2d 443, 445 (Ala.Civ.App.1976)).
 

 In
 
 Cluxton v. Cluxton,
 
 431 So.2d 1296, 1298 (Ala.Civ.App.1983), this court affirmed the trial court’s judgment holding that Mrs. Cluxton had failed to establish a common-law marriage with her former husband. This court stated, among other things, that “during their period of cohabitation Mrs. Cluxton and the former husband never handled their finances in such a manner as to evidence the present intention to engage in a marital relationship,” that the parties had maintained separate accounts, and that the former husband “did little to help with household expenses.” 431 So.2d at 1298. Likewise, in the present case, evidence was presented indicating that Bowden and Watson cohabited only “off and on,” that Bowden and Watson did not share a bank account or handle their finances in such a manner as to evidence their intention to engage in a marital relationship, and that Bowden did not contribute to Watson’s household expenses. That Bowden cohabited with Watson only intermittently was supported by Eads’s and the administrator’s affidavits and also by various documents submitted by both parties indicating that Bowden had, at times, listed Watson’s address in Chancellor as her address but had, at other times, listed another address in Coffee Springs as her address. Eads’s and the administrator’s affidavits also indicate that Bowman and Watson did not present themselves to others as husband and wife.
 

 As was the case in
 
 Coleman,
 
 we conclude that the evidence contained in the record creates a genuine issue of material fact regarding whether Watson and Bow-den were common-law married and that the trial court’s summary judgment in favor of Bowden on that issue was inappropriate. We, therefore, reverse that judgment, and we remand the cause for further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and THOMAS, JJ., concur.