On Application for Rehearing

DONALDSON, Judge.
This court’s order of April 8, 2016, affirming the judgment of the Jefferson Circuit Court (“the trial court”), without an opinion, is withdrawn, and the following is substituted therefor.
Ronald A. Aramini (“the former husband”) appeals from the judgment of the trial court finding him in contempt for failing to fulfill his periodic-alimony obligation to Irene Ann Aramini (“the former wife”), awarding the former wife an amount for the former husband’s unpaid-alimony arrearage, and reducing but not terminating the former husband’s monthly alimony obligation. We affirm the judgment.

Facts and Procedural History

The former husband and the former wife were divorced in 2002 after 34 years of marriage. The judgment of divorce incorporated an agreement of the parties that included a provision obligating the former husband to pay the former wife $5,000 a month as periodic alimony and to maintain a $400,000 life-insurance policy naming the former wife as beneficiary. At the time of the divorce, the former husband worked as president and chief executive officer at a company that provided aircraft-maintenance and aircraft-modification services (“the aircraft company”).
In December 2010, the former husband informed the former wife that his salary had been reduced and that his stock options in the aircraft company had become worthless. In January 2011, the former husband began sending reduced alimony payments to the former wife without her consent to the reduction. The aircraft company filed for bankruptcy on February 15, 2011. In September 2011, the former husband informed the former wife that he had experienced a further reduction in his salary and other financial losses. He began sending the former wife alimony payments that were further reduced, again without her consent.
On January 5, 2012, the former wife filed a petition seeking a finding of contempt against the former husband, alleging that, since January 2011, he had *326 willfully refused to fulfill his alimony obligation. On February 20, 2012, the former husband filed an answer and a counter petition seeking to terminate or reduce his alimony obligation, alleging that there had been a reduction in his earnings and a diminishment of his assets. The former husband did not seek to eliminate his life-insurance obligation in his pleadings.
The trial court conducted a trial in March and September 2014 in which it received testimony and documentary evidence from both parties. The parties submitted evidence that contains several discrepancies as to the amount of monthly alimony payments made by' the former husband. The former husband’s bank statements and copies of cashed checks show that, in 2011, the former husband paid the former -wife $4,000 each month from January to August, except for May, when he paid only $2,000, and that he paid $3,320 in September. The former wife prepared a chart of the former husband’s arrearage amounts that differed in the amount of payments made for a few of the months in 2011, The chart indicated that the former husband paid only $2,000 in March, April, July, and August and that he paid $3,200 in September. The evidence presented by the former husband shows that the total amount of payments made in 2011 was $42,920; the former wife’s total for that period was $32,800,[1] The evidence from both parties shows that the former husband paid $3,200 each month from October 2011 to March 2013. The former wife’s chart indicates that the former husband stopped making any payments after March 2013. The former husband testified to making a payment in April 2013, and, in a posttrial motion, he submitted a copy of an e-mail his counsel had sent to opposing counsel to show that he had made payments of $3,200 in April 2013 and $1,600 in May 2013.[2]
At trial, the former husband testified that, while he was working for the aircraft company, .he received a 20% salary reduction in 2007, a 10% salary reduction in 2010, and a 10% to 15% salary reduction after the company filed for bankruptcy in February 2011. The aircraft company was purchased out of bankruptcy by another company for which the former husband worked as chief executive officer. The former husband’s employment at that company ended on March 31, 2013. He testified that, in addition to his salary through March 2013, in 2013 he received compensation for consulting work, Social Security benefits, and income from retirement accounts. The former husband testified that his income was around $400,000 in 2001 and around $590,000 in 2002, which is when the parties’ divorce judgment was entered. He testified that his income was $426,361 in 2009, $293,609 in 2010, $388,864 in 2011, $477,884 in 2012, and $74,000 in 2013, which were the years leading up to and the years during which he made reduced alimony payments.[3] The former husband testified that in 2013 he received approximately $300,000 in inheritance from his mother’s estate and $11,000 from a claim of loss of rental income from a Flori *327 da condominium as a result of the BP oil spill in the Gulf of Mexico. .
The former husband testified that his overall estate has diminished since the entry of the divorce judgment and that his estate was worth $874,000 at the time of the trial. He testified that the stock options he had in the aircraft company no longer had any value and that he has lost many of the benefits he received from the aircraft company, including a rabbi trust and a $400,000 life-insurance policy naming the former wife as beneficiary that he had maintained since the divorce. The former husband testified to owning a house with an indebtedness of $595,000.[4] A tax assessment valued the house at $818,270, and the former husband testified that he would like to list the house for sale for $900,000 to $950,000. The former husband testified to recently executing a deed in lieu of foreclosure for a condominium he had owned in Florida. According to his testimony, his brokerage account contained $270,000, and his individual retirement account contained $155,000 to $160,000. He testified to having a power boat with a fair market value of $3,000 and a motor vehicle with $6,000 to $7,000 in equity value.
At the time of the trial, the former husband was 68 years old and remarried. He testified that he has had eye surgeries, that he has had type 1 diabetes since 1998, and that he has peripheral neuropathy and a slight tremor. Before working at the aircraft company, the former husband worked at Continental Airlines for 15 years, and he worked at Allegheny Airlines for a time. He testified that, since becoming unemployed, he has submitted his resume to several companies that do. consulting. work and to one company that was seeking a new-president, but he has not received any interview requests. He continues to monitor trade magazines for possible job openings and consulting opportunities.
According to his testimony and exhibits, the former husband’s regular monthly income consists of $2,335 from Social Security benefits; $1,155 from a retirement account; $279 from another retirement account; and an amount from earned interest that is not clear from the record. He testified that, within the 12-month period before the trial, he received capital gains of $290,000 but that his investments overall were down $20,000 over the past 3 years. The former husband submitted'an exhibit showing monthly living expenses of $2,978 and additional monthly expenses of $2,976 from the mortgage obligation on his house, utility bills, and other costs associated with his house and condominium.[5] As previously noted, he testified that he planned on selling his house.
At the time of the trial,, the former wife was 71 years old. She had surgery in 2010 and in 2012. She testified to having brain damage from cerebral-spinal-fluid leakage that causes problems with her' memory, focus, and ability to carry on a conversation. She also has celiac disease, osteoporosis, high blood pressure, and, at the time of the trial, was receiving ongoing treatment for an infection in her finger.
The former wife was not employed at the time of the parties’ divorce. Her educational background consists of a two-year college degree in “socioscience” she received in 1965. She testified that, since *328 the divorce, she was briefly employed once in 2006 in a job not specified in the record.
The former wife lives in New Jersey. She testified that her house had a $350,000 fair market value and that she had a total of $290,000 in her savings and investment accounts. The former wife receives $900 a month in Social Security benefits, and she testified to receiving a total of $1,231 in interest income in 2013. She testified to having monthly expenses of $5,800 to $6,000 and that she has had to use her savings to pay for her expenses since the former husband stopped making alimony payments.
Both parties testified to having a timeshare property arrangement in Lake Tahoe and to having gambled during the period in which the former husband reduced his alimony payments to the former wife.
On December 4, 2014, the trial court entered a judgment that reduced the former husband’s monthly alimony obligation to $2,500, retroactive to May 2013, and found the former husband in civil contempt for having failed to fulfill his alimony obligation from January 2011 to April 2013. The trial court found that the former husband had failed to pay the former wife $90,800 in alimony during that period and ordered him to pay $14,745 in interest. The judgment sets a sentence of 145 days of incarceration with the condition that the former husband could purge himself of contempt by paying the former wife $105,545 at a rate of “Thirty Five Thousand One Hundred and Eighty ($35,182) [sic] and 00/100 per month until paid in full.” The trial court also awarded the former wife attorney fees in “the sum of Ten Thousand and 00/100 ($22,309.75) [sic] Dollars.”
On January 2, 2015, the former husband filed a postjudgment motion seeking to alter or amend the judgment. The former husband argued that his alimony obligation should be terminated retroactive to the filing of his petition to modify, that alimony payments made after the filing of his petition should be credited to the arrear-age amount, that the “purge” conditions were unreasonable, that he did not have the ability to pay for attorney fees, and that his life-insurance obligation under the divorce judgment should be terminated. After conducting a hearing, the trial court denied the former husband’s motion on March 30, 2015. The former husband then filed a timely notice of appeal to this court.

Discussion

The former husband argues that he lacked the financial means to fully meet his alimony obligation and that, therefore, the trial court’s finding of contempt as well as the award of attorney fees to the former wife based on the contempt finding should be reversed.
“ ‘[Wjhether a party is in contempt of court is a determination committed to the sound discretion of the trial court, and, absent an abuse of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, this court will affirm.’
“Stack v. Stack, 646 So.2d 51, 56 (Ala. Civ.App.1994).... Rule 70A(a)(2)(D)[, Ala. R. Civ. P.,] defines ‘civil contempt’ as a ‘willful, continuing failure or refusal of any person to comply with a court’s lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with.’ ... [T]he inability to comply with the trial court’s judgment is a valid defense in contempt proceedings. See Gilbert v. Nicholson, 845 So.2d 785, 791 (Ala.2002); Ex parte Baker, 623 So.2d 304, 306 (Ala. Civ.App.1993); and Hill v. Hill, 562 So.2d 255, 257 (Ala.Civ.App.1990). However, the trial court’s determination *329 that a party’s failure to comply with a judgment is willful and not due to an inability to comply, when based on ore tenus evidence, will be affirmed if it is supported by one view of that evidence. See Gilbert, 845 So.2d at 791-92; Hill, 562 So.2d at 257.”
Stamm v. Stamm, 922 So.2d 920, 924 (Ala. Civ.App.2004).
The trial court found the former husband in civil contempt for not fulfilling his alimony obligation from January 2011 to April 2013. Evidence in the record shows that the former husband’s income was $388,864 in 2011; $477,884 in 2012; and $74,000 in 2013. We note that the amount of alimony that was unpaid in 2013 was less than $50,500, and that he testified to having an estate worth at least $374,000 in March 2014. Taking into consideration the former husband’s income and estate during the period for which he was found to be in contempt, the evidence in the record supports the trial court’s finding that the former husband had the means to fulfill his alimony obligation during that period. Therefore, we affirm the judgment insofar as it finds the former husband in contempt and awards the former wife attorney fees.
We address next the former husband’s argument that the trial court should have terminated his periodic-alimony obligation rather than merely reducing it.
“The modification of periodic alimony is a matter within the discretion of the trial court, and on appeal its judgment on that matter is presumed correct. Posey v. Posey, 634 So.2d 571 (Ala.Civ.App. 1994). This court will not reverse such a judgment unless it is not supported by the evidence or is otherwise plainly and palpably wrong. Id.”
Kiefer v. Kiefer, 671 So.2d 710, 711 (Ala. Civ.App.1995).
“ ‘In considering whether to modify an alimony obligation, the court should consider the earning capacity of the spouses, the payor’s ability to meet the needs of the recipient spouse, and the estates of the respective parties.’ Edwards v. Edwards, 894 So.2d 698, 700 (Ala.Civ.App.2004) (citing Kiefer v. Kiefer, 671 So.2d 710 (Ala.Civ.App.1995)). ‘Factors the trial court may consider in determining whether to modify alimony include “the recipient spouse’s financial needs, the amount of the estate of each spouse, the ability of the payor spouse to respond to the recipient spouse’s needs, the ability of each spouse to earn income, and the remarriage of either party.” ’ Posey v. Posey, 634 So.2d 571, 572-73 (Ala.Civ.App.1994) (quoting White v. White, 589 So.2d 740, 742 (Ala.Civ.App. 1991)).”
Waddell v. Waddell, 904 So.2d 1275, 1287 (Ala.Civ.App.2004).
“The burden is on the party seeking a modification of the periodic alimony award to show the trial court that a material change in the parties’ circumstances has occurred since the trial court’s last judgment or order.” Taylor v. Taylor, 640 So.2d 971, 973 (Ala.Civ.App.1994) (citing Glenn v. Glenn, 626 So.2d 638 (Ala. Civ.App.1993)). “Even if a material change of circumstances is shown, a trial court is not required to modify alimony.” Santiago v. Santiago, 122 So.3d 1270, 1278 (Ala.Civ.App.2013) (citing Kiefer, 671 So.2d at 711, in turn citing Mullins v. Mullins, 475 So.2d 578 (Ala.Civ.App.1985)). When a judgment reducing an alimony obligation does not contain specific findings of fact, “we presume that the trial court made those findings that would be necessary to support its judgment, provided, of course, that the evidence would support those implicit findings.” Henning v. Henning, 26 So.3d 450, 455 (Ala.Civ.App.2009).
*330 The former husband asserts that ■he presented substantial evidence of a decrease in his estate, assets, and ability to earn since the divorce. According to his testimony, the former husband’s estate was worth $374,000 at the time of the trial, his regular monthly income was at least $3,769 at the time of the trial, and he realized $290,000 in capital gains within the 12-month period before the trial. The evidence in the record shows that the former wife’s income, which primarily consists of Social Security benefits, is insufficient to meet her expenses. We conclude that the evidence supports the view that the former husband receives sufficient income and has sufficient assets to pay the reduced alimony obligation and that the former wife demonstrated a need for continued alimony payments. Because the former wife demonstrated a continuing need for alimony, we hold that the trial court was within its discretion not to terminate the former husband’s alimony obligation. See Stevens v. Stevens, 641 So.2d 826, 827 (Ala.Civ.App.1994) (reversing judgment suspending alimony payments when payor had the means to make payments and the payee was in need of the funds).
• The former husband further asserts that his regular monthly income is insufficient to meet any ongoing alimony obligation in light of his monthly expenses. The former, husband claimed $2,978 in monthly- living expenses and an additional $2,976,in monthly expenses for his house and condominium. We note that the former -husband testified that he planned on selling the house and that he had executed a deed in lieu of foreclosure on the condominium. Although the former husband testified to being unemployed at the time of the trial, he was actively seeking work. “This court has held that the ‘ability to earn, as opposed to actual earnings, is a proper factor to consider’ in deciding an award of periodic alimony.” Miller v. Miller, 47 So.3d 262, 265 (Ala.Civ.App.2009) (quoting Ebert v. Ebert, 469 So.2d 615, 618 (Ala.Civ.App.1985)). The record supports a finding that the former husband possesses the skills and experience for an earning capacity that, even if not at the same level as at the time of the divorce, was still sufficient to meet the reduced alimony obligation and his claimed monthly living expenses. The former husband therefore has failed to establish that the reduced alimony obligation was inequitable.
In his arguments, the former husband relies on Miller in contending that this court must presume that the trial court based its decision entirely on his regular monthly income at the time of the trial because it made no specific findings of fact regarding his earning capacity. However, in Miller, this court merely noted the absence of specific findings regarding a party’s ability to earn, and we construed the findings that were in the judgment to indicate that the trial court had based its modification of alimony only on the party’s actual income.[6] Although the judgment in *331 this case also does not contain findings specifically regarding the former husband’s earning capacity, the former husband fails to guide us to any findings in the judgment indicating the basis for the trial court’s decision. He therefore fails to establish that we are precluded from construing the trial court’s alimony reduction to have been based on his earning capacity, in addition to his income, at the time of the trial.
We next address the former husband’s argument that the payment schedule requiring him to pay more than $35,000 a month to pay off the $105,645 alimony arrearage and interest and to purge himself of contempt should have factored into the decision regarding the termination of his periodic alimony and that those payments are inequitable. “The trial court has discretion to set a reasonable arrearage payment schedule commensurate with a party’s ability to pay.” Horwitz v. Horwitz, 897 So.2d 337, 343 (Ala.Civ.App.2004). The former husband has assets, such ás a brokerage account in the amount of $270,000. Therefore, the trial court had before it sufficient evidence to conclude that the former husband has the present ability to make the ordered payments in order to purge himself of contempt and that those payments did not necessitate the termination of his periodic-alimony obligation. See Davis v. Davis, 518 So.2d 156, 159 (Ala.Civ.App.1987) (affirming finding of contempt when husband had shares of stock that could have been used to pay for arrearage).
The former husband next argues that the trial court improperly calculated the arrearage amount from the evidence presented by the parties. The former husband failed to preserve this argument for appeal by not asserting it before the trial court. Accordingly, we are constrained from considering the argument. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (“This court cannot consider arguments raised- for the' first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.”); Meek v. Meek, 83 So.3d 541, 554 (Ala.Civ.App.2011) (affirming ar-rearage amount awarded in judgment when party failed to argue in a post-judgment motion that the trial court had incorrectly calculated the.amount or that there was insufficient evidence to support the amount).
The former husband alternatively argues that, in the event that we affirm the trial court’s finding of contempt, the decision not to terminate periodic alimony, and the determination of his alimony arrear-age, he should receive partial credit for the alimony payments he mude- after he petitioned to modify the alimony obligation on February 20, 2012. He seeks partial credit in the amount of the difference between the payments he made and the reduced alimony obligation of $2,500. The trial court reduced the alimony obligation, retroactive to May 2013, and the. only payment the former husband made after that time, according to the former husband’s own assertions, is a $1,600 payment in.May 2013, which is less than the reduced alimony obligation. As a result, the former husband.has not overpaid any amounts pursuant to the judgment.
The trial court has the discretion to determine the effective date of a modified alimony obligation, as long as the date is not earlier than when the petition to modify was filed. Blount v. Blount, 159 So.3d 737, 742 (Ala.Civ.App.2013). In light of the payments he asserts he made, the former husband consistently paid more than $2,500 a month for alimony from February 2012 to April 2013. The former husband provides no reasons or facts to show that the reduced alimony obligation *332 should have been applied retroactively to February 2012 as opposed to May 2013. He therefore fails to demonstrate that the trial court exceeded its discretion in setting the effective date for the modified alimony obligation or that he is due to receive any partial credits for his previous alimony payments.
The former husband also argues that the judgment contains two presumably clerical mistakes by ordering him to pay monthly arrearage payments in the amount of “Thirty Five Thousand One Hundred and Eighty ($35,182) [sic]” and by awarding the former wife attorney fees of “Ten Thousand and 00/100 ($22,309.75) [sic].” The former husband did not seek an amendment or clarification of the judgment in the trial court in regard to the discrepancy in the monthly arrearage payment. As a result, any error as to that issue was not preserved for appeal. See Andrews, supra. Although the former husband did contend in his postjudgment motion that the attorney-fee award was inconsistent, he merely listed the discrepancy as a ground for reversal in the conclusion sections in his appellate briefs without making any substantive argument for reversal or providing supporting legal authority. “This court will address only those issues properly presented and for which supporting authority has been cited.” Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App.1996). Clarification of the apparent discrepancies was not required for our review of the other issues raised on appeal. The former husband, therefore, fails to establish a ground for reversal of the judgment.[7]
Lastly, the former husband asserts that the judgment fails to address his request to terminate his obligation under the divorce judgment to maintain a $400,000 life-insurance policy naming the former wife as beneficiary. However, the former husband never requested to terminate his life-insurance obligation in any pleadings or motions before the trial court. See Ex parte Burr & Forman, LLP, 5 So.3d 557, 566 (Ala.2008) (quoting Archie v. Enterprise Hosp. & Nursing Home, 508 So.2d 693, 696 (Ala.1987)) (“‘[A] pleading must give fair notice of the claim against which the defendant is called to defend.’ ” (emphasis omitted)). Such a request was not made to the trial court at trial even though the former husband provided some testimony on the loss of the life-insurance policy he had maintained pursuant to the divorce judgment. We note that the loss of the life-insurance policy was first raised by the former wife’s counsel and that the former husband had testified regarding the policy in conjunction with other matters purporting to show the diminishment of his estate. The trial court, therefore, was never asked to terminate the life-insurance obligation before entering the judgment.
In his principal appellate brief, the former husband argues that the cause should be remanded for clarification of the judgment regarding his life-insurance obligation. Because the former husband did not raise the request to terminate that obligation before the judgment was en *333 tered, his argument fails to provide a basis for reversal or remand. See Andrews, supra. In his reply brief, the former husband argues that the judgment was not final because his request to terminate the life-insurance obligation was tried by implied consent of the parties. However, the former husband did not assert in his principal brief that his request to terminate the life-insurance obligation had been tried by the implied consent of the parties pursuant to Rule 15(b), Ala. R. Civ. P., and, therefore, the former wife was not provided with the opportunity to address that claim in her appellate brief. Because this issue was raised for the first time in his reply brief, we cannot consider the former husband’s argument. See Melton v. Harbor Pointe, LLC, 57 So.3d 695, 696 n. 1 (Ala.2010)(“[T]his Court will not consider arguments made for the first time in a reply brief.”).
The former husband first requested the termination of his life-insurance obligation in his postjudgment motion, which the trial court denied. The trial court has the discretion to consider a new legal argument presented for the first time in a postjudgment motion, and an appellate court need not presume the trial court considered the issue when the motion is denied without explanation. Special Assets, LLC v. Chase Home Fin., LLC, 991 So.2d 668, 677-78 (Ala.2007). Accordingly, we hold that the judgment was final for the purposes of our review.
For the foregoing reasons, we conclude that the former husband has failed to establish a ground for reversal of the judgment. Accordingly, we affirm the judgment.
The former wife’s requests for an award of attorney’s fees on original submission and on rehearing are denied.
APPLICATION GRANTED; NO-OPINION ORDER OF AFFIRMANCE OF APRIL 8, 2016, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
THOMPSON, P.J., and PITTMAN and MOORE, JJ., concur.
THOMAS, J., concurs in the result, without writing.

. The former wife’s tax return for 2011 differs from her chart by indicating that she received $32,900 in alimony for that year.

. The e-mail refers to bank statements, which were supposedly attached to the e-mail, that have not been included in the record on appeal.

.The former husband testified that the company that purchased the aircraft company has refused to pay him $100,000 in severance pay and that a separate lawsuit has arisen from that dispute.

. The former husband testified that, in 2008, a landslide caused damage to his house that cost $380,000 in repairs for which he could recoup only $20,000 in damages after a lawsuit.

. Presumably, the exhibit refers to the condominium for which the former husband had executed a deed in lieu of foreclosure.

. In Miller, 47 So.3d at 265-66, we stated:
"[T]he trial court did not make any findings of fact concerning the former husband's ability to pay. Instead, the trial court apparently found that the former husband had actual current income sufficient to pay alimony to the former wife.2 Such a finding of fact is not supported by the evidence. The former wife did not present any evidence indicating that the former husband had any income other than $800 per month in retirement benefits.
" 2The trial court’s judgment included findings that ‘[the former husband] is paying his South Carolina expenses and supporting his new family somehow’ and that 'the Former Husband in this case simply cannot be destitute and maintain the lifestyle in South Carolina about which he testified at trial,’ ”

. We note that Rule 60(a), Ala. R. Civ. P., provides:
"Clerical mistakes in judgments, orders, or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal or thereafter, such mistakes may be so corrected by the trial court. Whenever necessary a transcript of the record as corrected may be certified to the appellate court in response to a writ of certiorari or like writ.”