MOORE, Judge.
This court's no-opinion order of affirmance of February 10, 2017, is withdrawn, and the following is substituted therefor.
Kenneth Lackey Hopkins ("the father") appeals from a judgment entered by the Shelby Circuit Court ("the trial court") in postdivorce modification and contempt proceedings. We affirm the trial court's judgment.
Procedural History
The father and Jennifer J. Hopkins ("the mother") were divorced by a judgment *109 entered by the trial court on December 13, 2013. The divorce judgment, as amended, among other things, awarded the parties joint legal custody of their one minor child ("the child"); awarded the mother, in effect, sole physical custody of the child; awarded the father specified visitation; encouraged the parties to agree to extend or to reschedule the father's visitation as the child gets older in accordance with the child's best interests; provided that "[e]ach party shall give the other party the right of first refusal for child care during his or her custodial visitation period[ ] in the event the custodial parent is required to be out of town for an overnight stay or is otherwise in need of extended child care"; required each party to notify the other party in the event the child became seriously ill or was required to be hospitalized due to an accident; and provided that each party allow the other party reasonable telephone access to the child. The divorce judgment, as amended, also provided that the father must pay $829 per month in child support, $1,000 per month in rehabilitative alimony for 24 months, and "COBRA" insurance premiums for the mother for 24 months. The trial court reserved jurisdiction to award periodic alimony.
On April 10, 2014, the mother filed a complaint seeking, among other things, to hold the father in contempt for allegedly failing to pay rehabilitative alimony as ordered by the divorce judgment. On May 8, 2014, the father answered the mother's complaint. On July 24, 2014, the father amended his answer and counterclaimed, requesting that the trial court modify custody or visitation and that the trial court find the mother in contempt for interfering with his visitation with the child. On January 23, 2015, the mother filed an amended complaint requesting, among other things, periodic alimony. On February 19, 2015, the father filed an amended answer. The mother filed a second amended complaint on May 4, 2015, alleging that the father had failed to return the child on time after his visitation and seeking to hold the father in contempt.
After a trial, the trial court entered a judgment on March 28, 2016, ordering the father to pay $750 per month in periodic alimony, holding the father in contempt for failing to pay rehabilitative alimony, ordering the father to pay $2,000 as a portion of the mother's attorney's fees, and denying all other relief requested by both parties. On April 20, 2016, the father filed a postjudgment motion. That motion was denied by operation of law on July 19, 2016. On August 26, 2016, the father filed his notice of appeal.
Discussion
I.
On appeal, the father first argues that the trial court erred in declining to hold the mother in civil contempt for interfering with his visitation with the child.[1]
" 'Civil contempt' means willful, continuing failure or refusal of any person to comply with a court's lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with." Rule 70A(a)(2)(D), Ala. R. Civ. P. " ' "[W]hether a party is in contempt of court is a determination committed *110 to the sound discretion of the trial court, and, absent an abuse of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, this court will affirm." ' " Aramini v. Aramini, 220 So.3d 322, 328 (Ala. Civ. App. 2016) (quoting Stamm v. Stamm, 922 So.2d 920, 924 (Ala. Civ. App. 2004), quoting in turn Stack v. Stack, 646 So.2d 51, 56 (Ala. Civ. App. 1994) ). In this case, the father alleged that the mother had committed several acts in willful violation of the terms of the divorce judgment. We address those allegations in turn.
First, the father contends that the mother willfully violated the "extra" visitation terms of the divorce judgment. The divorce judgment establishes a specific schedule for visitation by the father, but then states:
"The custodial/visitation periods as provided herein are intended by the Court to be the minimum to which each parent is entitled. The parties are encouraged to extend such periods herein allowed as the child grows older, and as may be in the best interest of the child and to reschedule, by mutual agreement, any custodial/visitation period which is inconvenient for the parties or interferes with the child's extracurricular activities, with both parties keeping in mind the best interest of the child."
The father complains that the mother refused to provide him with visitation beyond the schedule provided in the divorce judgment. We conclude that, based on the terms of the divorce judgment, the mother was not legally required to provide the father with additional visitation.
In Cochran v. Cochran, 5 So.3d 1220 (Ala. 2008), the divorce judgment awarded the former husband reasonable visitation with the parties' children as set out in a specific schedule plus "any other times mutually agreed upon by the parties." The former husband and the former wife initially agreed to additional weekday visits, but the former wife subsequently determined that such visitation did not serve the best interests of the children because it interfered with the ability of the children to complete their homework, so she withdrew her consent. The supreme court held that the former wife was not legally obligated to continue the weekday visits under the terms of the divorce judgment and that she could lawfully rescind her agreement to provide additional visitation based on the best interests of the children. 5 So.3d at 1228.
In this case, as in Cochran, the divorce judgment encourages, but does not require, the mother to agree to additional visitation periods, but only if she deems such visitation to be in the best interests of the child. The mother testified that she had refused the father's request for extra visitation only once, except for certain occasions when the father had asked to keep the child until Monday during his weekend visitations. Regarding the father's requests to extend his visitations until Monday, the mother testified that she had not allowed him to do so every time he had asked because, on the occasions when she did grant his request, the father would not prepare the child for school or because the child had had an activity scheduled for Sunday night. Based on that testimony, the trial court reasonably could have concluded that the mother had denied the father additional visitation only to serve the best interests of the child and that she had not willfully refused to obey or resist the "extra" visitation provision of the divorce judgment.
The father next argues that the mother had not given him the right of first refusal to watch the child on one occasion.
*111 The divorce judgment provides, in pertinent part:
"Each party shall give the other party the right of first refusal for child care during his or her custodial/visitation period, in the event the custodial parent is required to be out of town for an overnight stay or is otherwise in need of extended child care."
In this context, a "right of first refusal" means that, if a party requires extended child care, that party must first offer the other party an opportunity to personally care for the child before allowing a third party to assume the care of the child. See generally Dumont v. Dumont, 961 N.E.2d 495, 500 (Ind. Ct. App. 2011) (citing Indiana Parenting Time Guidelines, § I(C)(3)); 750 Ill. Comp. Stat. 5/602.3(b).
The father testified that, on one occasion, the mother had left the child with the child's maternal grandparents while she went on vacation for an extended period without first offering him the right to care for the child. On that occasion, the father picked up the child after the maternal grandmother contacted him and requested that he assume the care of the child. The father kept the child for three days before the mother returned from vacation. In his appellate brief, the father does not cite to any part of the record indicating that the mother had willfully refused to offer him the right to care for the child on that occasion. The mother testified that she had always given the father the right of first refusal to watch the child but that she had allowed the child to stay with his maternal grandparents at times during weekends when she had custody of the child. The father does not cite any evidence regarding the nature of the weekend visits or argue that those weekend visits violated the right-of-first-refusal provision in the divorce judgment.
From that bare evidence, we cannot say that the decision of the trial court not to hold the mother in civil contempt was plainly and palpably wrong. The trial court could have determined that the father had failed to prove that the mother had willfully refused to provide him with the right of first refusal on the one occasion to which he testified or that the mother had continually denied the father the right of first refusal when she needed extended child care. See Rule 70A, Ala. R. Civ. P.
The father also argues that the mother violated the provision in the divorce judgment granting him reasonable telephone access to the child. The divorce judgment provides that "[e]ach party shall have reasonable telephone access with the minor child while in the physical control of the other parent." The father testified that he had been unable to communicate with the child by telephone at times because the child goes to bed early. In his appellate brief, the father claims that the mother interfered with his telephone access by failing to answer the telephone or by stating that the child was in bed; however, the cited portions of the record do not contain any testimony indicating that the mother failed to answer the telephone or any evidence indicating that the mother had falsely asserted that the child was in bed. See Rule 28(a)(7), Ala. R. App. P. The mother testified that every time the father telephones the child, she and the child stop what they are doing and answer the telephone. The trial court reasonably could have concluded that the mother had not denied the father reasonable telephone access in violation of the divorce judgment.
Another provision of the divorce judgment requires a party exercising physical custody of the child to immediately notify the other party "[i]n the event that the child becomes seriously ill or requires *112 hospitalization due to an illness or accident." The father argues that the mother violated that provision by proceeding with a dental surgery without his knowledge. The father testified that the mother notified him that the child was going to have a dental procedure, that the father had disagreed with the child's having the procedure and had wanted to consult with the oral surgeon, but that the mother had proceeded with the surgery anyway. The mother, on the other hand, testified that the father had forbidden her from allowing the surgery and had stated that he would set up a consultation with a different dentist. The trial court reasonably could have concluded from the competing testimony that, assuming that the foregoing provision applied, the mother had complied by notifying the father of the child's need for surgery and by identifying the medical provider who would conduct the surgery and, thus, had not violated the terms of the divorce judgment.
The father finally argues that the mother kept the child during his visitation time. He cites an instance when, he says, he did not receive his 14-day summer visitation as set out in the divorce judgment. However, the divorce judgment provides that each parent shall receive two 14-day custodial/visitation periods during the summer "upon written notice to the other party at least thirty (30) days in advance." The father admitted that he had failed to give the 30-day notice required by the divorce judgment to exercise that visitation. Based on that testimony, the trial court reasonably could have determined that the mother had not withheld summer visitation from the father in violation of the terms of the divorce judgment.
Based on the foregoing, and considering our standard of review and the trial court's discretion on matters of contempt, we cannot conclude that the trial court erred by not holding the mother in contempt. Aramini, 220 So.3d at 329-30.
II.
The father next argues that the trial court should have modified the divorce judgment to give him expanded visitation with the child. In his appellate brief, the father argues that "the mother provided absolutely no evidence of any cause or reason that the father should not have expanded, even equal, custody time with [the child]." However, in order to obtain a modification of the visitation aspects of a divorce judgment, the burden rests on the parent seeking modification to prove that a material change in circumstances has occurred and that modification would be in the best interests of the child based on those changed circumstances. See, e.g., Flanagan v. Flanagan, 656 So.2d 1228, 1230 (Ala. Civ. App. 1995).
The father asserts in his brief to this court that he proved that the mother was using the visitation schedule in the divorce judgment "as a weapon" against the father. The father testified that he wanted more time with the child and that the mother had refused to give it to him. The mother, on the other hand, testified that she had cooperated with the father to give him more time except when his request interfered with the child's being prepared for school or attending a planned activity. The mother also testified that she was concerned about the father's having expanded visitation because the father had failed to give the child his asthma medication.
In its final judgment, the trial court denied the request for modification, but reminded the parties "of the importance" of the portion of the divorce judgment encouraging additional visitation for the father. Visitation is a matter within the discretion of the trial court.
*113 E.W. v. Montgomery Cty. Dep't of Human Res., 602 So.2d 428, 429 (Ala. Civ. App. 1992). A trial court's discretion is guided by what will protect and enhance the best interests and welfare of the child. Id. A trial court's decision regarding visitation will not be reversed absent an abuse of discretion or a showing that it is plainly in error. Id. The trial court in the present case did not elaborate on its reasons for maintaining the visitation provisions as set out in the divorce judgment. From the record, we conclude that the trial court reasonably could have determined that the father had failed to prove that the mother was denying the father the visitation that was found to be in the child's best interests at the time of the divorce judgment and that the visitation provisions as contained in the divorce judgment continued to adequately serve the best interests of the child. Considering the trial court's discretion and our standard of review, we cannot conclude that the trial court exceeded its discretion. Flanagan, 656 So.2d at 1230.
III.
The father next argues that the trial court erred by finding him in contempt for failing to pay his rehabilitative-alimony obligation because, he says, he was unable to pay that obligation.
" '[T]he inability to comply with the trial court's judgment is a valid defense in contempt proceedings. See Gilbert v. Nicholson, 845 So.2d 785, 791 (Ala. 2002) ; Ex parte Baker, 623 So.2d 304, 306 (Ala. Civ. App. 1993) ; and Hill v. Hill, 562 So.2d 255, 257 (Ala. Civ. App. 1990).... [T]he trial court's determination that a party's failure to comply with a judgment is willful and not due to an inability to comply, when based on ore tenus evidence, will be affirmed if it is supported by one view of that evidence.' "
Aramini, 220 So.3d at 328 (quoting Stamm v. Stamm, 922 So.2d at 924 ).
The divorce judgment required the father to pay the mother $1,000 per month in rehabilitative alimony for 24 months. The father paid no rehabilitative alimony from the time the divorce judgment was entered on December 13, 2013, until May 2015, at which time he paid the mother a lump sum of $10,000. In his brief, the father asserts that the property-division and attorney-fee provisions of the divorce judgment left him without liquid assets to pay the rehabilitative alimony. The father does not cite to any evidence introduced at trial to prove that contention; instead, he refers solely to the pleadings and motions filed on his behalf. See Rule 28(a)(7), Ala. R. App. P.; see also Thomason v. Redd, 565 So.2d 259, 260 (Ala. Civ. App. 1990) ("It is not the duty of this court to search the record to determine whether it contains evidence to support contentions made by a party."). The father does cite to an exhibit that was introduced into evidence showing that his monthly expenses, excluding rehabilitative alimony, total $4,389, while he receives a net income of only $4,110 per month.
It appears that the father determined his 2014 monthly net income incorrectly. The father actually regularly earned a net income of $4,454.47 per month because he was paid 26 checks of $2,055.91 in a calendar year (26 x $2,055.91 = $53,453.66 ÷ 12 = $4,454.47). Additionally, the father received two bonus checks, totaling approximately $12,500, in 2014. See J.D.A. v. A.B.A., 142 So.3d 603, 614 (Ala. Civ. App. 2013) (holding that trial court can consider bonuses when determining a party's ability to pay periodic alimony). The father testified that he retained 67% of the proceeds of those bonus checks, i.e., $8,375, increasing his net monthly income by almost $700 to $5,152.39. The father testified that, instead *114 of using his bonus money to pay the mother the rehabilitative alimony, he had elected to pay off other debts. The father's exhibit shows that the father used $200 of his net monthly income for entertainment.
From the evidence, the trial court could have determined that the father did not prove that he was unable to pay the rehabilitative alimony as ordered, particularly in light of the father's testimony that he intentionally used his bonus checks to pay other debts. The trial court could have determined from listening to the testimony of the father that he willfully disobeyed the provision of the divorce judgment requiring him to pay the mother $1,000 per month in rehabilitative alimony. Based on the ore tenus standard of review, we cannot place the trial court in error on this point. Aramini, 220 So. 3d at 332-33.
IV.
The father further argues that the trial court erred in awarding the mother attorney's fees because, he says, he should not have been held in contempt. Because we have rejected his challenge to the contempt findings and because the father makes no further argument with regard to the attorney's fee award, we decline to reverse the trial court's judgment on this point. See, e.g., Henderson v. Mogren, 149 So.3d 629, 639 (Ala. 2014) (upholding attorney-fee award when appellant limited his argument to the merits of the contempt finding that was determined to be without error); and Ala. Code 1975, § 30-2-54.
V.
The father last challenges the trial court's award of periodic alimony. The divorce judgment reserved jurisdiction over periodic alimony, specifically providing that the court would consider an award in the future "upon a material change in circumstances warranting such a change." Even without that language, the law generally provides that "a request for an award of alimony after the reservation of the issue must be based upon a material change of circumstances." Crenshaw v. Crenshaw, 816 So.2d 1046, 1048 (Ala. Civ. App. 2001). The father argues that the mother failed to prove a material change of circumstances.
The evidence indicated that, at the time of the entry of the divorce judgment, the mother was unable to work because of health issues, specifically, fibromyalgia and bone spurs, but had been denied disability benefits because, she said, she did not have enough work credits to qualify for those benefits. The mother received $112,000 in liquid assets in the divorce, but used $105,000 of those funds to purchase a condominium. The record does not show what debts the mother owed at the time of the entry of the divorce judgment. At the trial in the present case, the mother testified that her physical and financial conditions had changed. The mother testified that she had been diagnosed with an additional illness, osteoarthritis. She testified that she had recently been denied disability benefits again and that she had hired a lawyer to challenge that denial of benefits. The mother admitted that she had engaged in some physical activities, but, she testified, she cannot do physical activity for an extended period without experiencing pain. She testified that her only income is $829 in monthly child support, that she had not been able to pay her monthly expenses of $3,300, and that she has many outstanding bills that she cannot pay. The father testified that he believed the mother could do whatever she wanted to do.
In Stanford v. Stanford, 34 So.3d 677 (Ala. Civ. App. 2009), this court considered a case in which a former wife had been awarded rehabilitative alimony in the divorce judgment and had subsequently *115 petitioned for and was awarded periodic alimony. At the time of the modification proceedings, the former wife was earning $20,000 per year, which was more than she had been earning at the time of the divorce, but she had incurred $30,000 in student-loan debt, and the former husband was earning more than $60,000 a year. Stanford, 34 So.3d at 681. The former wife testified that she had not been able to meet her monthly expenses since the termination of her rehabilitative alimony. The former husband pointed out that the former wife's income had actually increased; however, this court noted that she still had a $200 monthly shortfall. This court determined that the trial court in Stanford had not exceeded its discretion in awarding the former wife periodic alimony.
Similarly, in the present case, although neither party's income had changed since the entry of the divorce judgment, at the time of the trial the mother had been largely without the benefit of the rehabilitative alimony that had been intended to assist her in becoming self-supporting. Instead, she had fallen behind on her bills, and it can be inferred that her situation at the time of the trial was attributable, at least in part, to the father's contemptuous refusal to pay rehabilitative alimony. The mother testified that her only income is $829 in monthly child support, leaving her with a $2,471 monthly deficit. Additionally, according to her testimony, which the trial court apparently believed, the mother had contracted a new disabling condition that prevented her from obtaining and maintaining employment.
"Alabama law is well settled that the modification of periodic alimony is a matter within the discretion of the trial court, and on appeal a trial court's judgment on that matter is presumed correct. Posey v. Posey, 634 So.2d 571, 572 (Ala. Civ. App. 1994)." Stanford, 34 So.3d at 681. Considering our limited standard of review, we cannot conclude that the trial court erred in determining that a material change in circumstances had occurred such that the mother has a need for an award of permanent periodic alimony. Id.
The father argues that he lacks the ability to pay periodic alimony to the mother.
"Once the financial need of the petitioning spouse is established, the trial court should consider the ability of the responding spouse to meet that need. Shewbart[ v. Shewbart], 64 So.3d [1080] at 1088 [ (Ala. Civ. App. 2010) ]. 'For purposes of determining a spouse's ability to pay, and for purposes of calculating an appropriate amount of periodic alimony, the trial court should ordinarily use the spouse's net income as the starting point for these evaluations.' Rieger v. Rieger, 147 So.3d 421, 431 (Ala. Civ. App. 2013)....
" 'In considering the responding spouse's ability to pay, the trial court should take into account all the financial obligations of the responding spouse, including those obligations created by the divorce judgment.' Shewbart, 64 So.3d at 1088."
McCarron v. McCarron, 168 So.3d 68, 79 (Ala. Civ. App. 2014).
As set out above in our discussion regarding the contempt finding, the evidence in the record establishes that the father could afford to pay the mother up to $1,000 in rehabilitative alimony. The record shows that the father regularly receives bonuses and that he can rely on that income in the future. See J.D.A., 142 So.3d at 614 ("[W]hether to include bonuses in a spouse's income for purposes of determining periodic alimony is discretionary with the trial court. The exercise of that discretion will naturally depend upon a number *116 of factors, including whether the bonuses are regular and consistent, and, therefore, can provide both the payor spouse and the recipient spouse with certainty in financial planning."). Thus, the trial court could reasonably have determined that the father could afford to pay $750 in monthly periodic alimony. We hold that the trial court did not exceed its discretion in finding that the father had the ability to pay the periodic alimony awarded. Stanford, 34 So.3d at 681.
VI.
The mother has requested that this court award her $13,225 in attorney's fees on appeal. This court has the discretion to award attorney's fees for the work performed by an attorney on appeal in cases such as this. K.D.H. v. T.L.H., 3 So.3d 894, 902 (Ala. Civ. App. 2008). The mother has attached to her appellate brief an itemization of the time her attorney spent in defending this appeal. That itemization shows that the mother's attorney expended a reasonable amount of time, 52.9 hours, at a reasonable hourly rate of $250. The evidence in the record shows that the mother has limited means to pay the fee. The father is in a better financial condition, but he also has limited means to pay the fee. The trial court in the proceedings below, in light of the financial conditions of the parties, awarded the mother only a portion of the attorney's fees she incurred. Following its lead, and considering that the mother has prevailed on all issues on appeal, this court holds that the father should pay $7,500 of the attorney's fees incurred by the mother on appeal. We deny the mother's request for additional attorney's fees for responding to the father's application for rehearing.
Conclusion
Based on the foregoing, we affirm the trial court's judgment and award the mother $7,500 in attorney's fees.
APPLICATION GRANTED; NO-OPINION ORDER OF AFFIRMANCE OF FEBRUARY 10, 2017, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
Thompson, P.J., and Pittman, Thomas, and Donaldson, JJ., concur.

In his counterclaim, the father requested that the mother be held in civil or criminal contempt, but, in his brief on appeal, the father cites only the law regarding civil contempt. " '[W]here no legal authority is cited or argued, the effect is the same as if no argument had been made.' " Steele v. Rosenfeld, LLC, 936 So.2d 488, 493 (Ala. 2005) (quoting Bennett v. Bennett, 506 So.2d 1021, 1023 (Ala. Civ. App. 1987) ) (emphasis added in Steele ). Thus, we address only whether the trial court erred in failing to find the mother in civil contempt.